**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Matt Clay HAWKINS, Defendant-**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Leo WITT, Defendant-Appellant.**

**Nos. 14524, 14525.**

United States Court of Appeals
Sixth Circuit.

Nov. 24, 1961.

838

Leer Buckley, Lexington, Ky., for appellant Matt Clay Hawkins.

John Y. Brown, of Brown, Sledd & McCann, Lexington, Ky., for appellant Leo Witt.

N. Mitchell Meade, Asst. U. S. Atty., Lexington, Ky. (Jean L. Auxier, U. S. Atty., Lexington, Ky., on the brief), for appellee.

Before MILLER, Chief Judge, MAGRUDER, Senior Circuit Judge, and WEICK, Circuit Judge.

SHACKELFORD MILLER, Jr., Chief Judge.

Appellants were found guilty by a jury under two counts of an indictment charging them with (1) knowingly and wilfully causing to be concealed a material fact in a matter within the jurisdiction of the Federal Housing Administration, involving the sale of real property in Lexington, Kentucky, by appellant Witt and his wife to Richard Porter and his wife, and (2) with knowingly and wilfully causing to be made a false statement in a Federal Housing Administration Form 2004C for the purpose of influencing the action of the Federal Housing Administration in connection with the insurance of a first mortgage loan on said property. Sections 2, 1001, 1010, Title 18 U.S.Code. Each appellant received a sentence of a year and a day on each count, the sentences to run concurrently.

In March 1956 Porter desired to purchase a house. Appellant Hawkins, who was a real estate broker, showed him several houses, including one owned by appellant Witt which was offered for sale at $10,050. On March 31, 1956, an "Offer to Purchase Contract" was signed by Mr. and Mrs. Porter and Mr. and Mrs. Witt, and witnessed by appellant Hawkins, providing for the sale of the real estate in

question at the price of $10,050. The contract provided for a cash deposit of $500, a Federal Housing Administration loan in the amount of $8,700 and a second mortgage for the balance.

It developed that the Porters were unable to make a cash deposit of more than $250. A second "Offer to Purchase Contract," also dated March 31, 1956, was drawn up and executed by the parties, with appellant Hawkins signing as a witness. This contract provided for the purchase price of $10,050, a Federal Housing Administration loan of $8,700, and stated, "As evidence of good faith to bind this contract, the sum of $1,350.00 is deposited with Clay Hawkins Real Estate to be applied on the purchase price upon passing of deed, * * *." However, the cash deposit of $1,350 referred to was not made, but in lieu of the major portion thereof, the Porters executed a note to the Witts for $1,305.56, secured by a second mortgage, payable in monthly payments of $25 over a period of five years. This mortgage was recorded by Witt.

The second contract was the contract submitted to the Federal Housing Administration for the purpose of obtaining the loan. Form 2004C of the Federal Housing Administration, being "Supplement to Mortgagee's Application; and Mortgagor's Statement," and signed by Porter, stated that $1,350 had been paid in cash. The Federal Housing Administration would not have made the loan if it had known that a second mortgage was to be given as part of the consideration.

■ Appellants' contention that they did not sign Form 2004C and were not parties to the loan has no merit. The indictment charges them with aiding and abetting and the jury was so instructed. Section 2, Title 18 U.S.Code.

■ Nor is it material that no loss has resulted to the Federal Housing Administration. Damage is not a necessary element in either of the statutes involved.

■ Appellants make their separate contentions that the evidence was insuffi-

cient to take the case to the jury or to sustain the verdict of guilty. A review of the evidence shows the following.

Appellant Hawkins admitted on cross-examination that he knew that the Federal Housing Administration could not guarantee a loan on property which carried a second mortgage. Porter testified that Hawkins told him not to tell the mortgagee about the second mortgage note. In a statement to the F.B.I. Hawkins said, "I acknowledge that I signed an 'Offer to Purchase Contract' as a witness which was submitted to F.H.A. showing that $1,350.00 had been deposited by the Porters, with me knowing at the time that this was not true. * * * I was personally aware that F.H.A. would not have insured this loan had it been made known that the note was being given. The reason I permitted this untrue statement to be submitted to F.H.A. was to enable the Porters to obtain a house, which they otherwise could not have afforded; to permit the Witts to sell their house, and to enable me to make a commission on a sale."

Although counsel for appellant Witt contends that Witt had no part whatsoever in the drafting of the several instruments, was not present when the application for the loan was made, and was merely an innocent property owner selling his property in the ordinary course of business, without knowledge that the purchase money would come through the F.H.A., the record shows something more. Both contracts expressly refer to a F.H.A. loan of $8,700, and he admitted on cross-examination that he knew "in a way" that it was to be submitted to the F.H.A. Porter testified that Witt was present when Hawkins told Porter not to tell the mortgagee about the second mortgage note. In his statement to the F.B.I. Witt said, "We did take the note for $1,305.56 and knew we were going to take the note when we signed the contract submitted to F.H.A. which showed that $1,350.00 had been deposited." He also admitted in this statement that he signed a document dated July 31, 1956,

addressed to F.H.A., which certified that he had received full payment of the amount stated in the contract for purchase of the property and that the owners were in no way indebted to him, adding, "I knew this document was false when I signed it but I did not realize that I was violating any law by causing this statement to be submitted to the F.H.A. and I did not feel that I was cheating the Government or anyone else out of any money."

We are of the opinion that the evidence was sufficient to take to the jury the case against each appellant under the charge of aiding and abetting in the commission of the offenses.

■ Appellants also complain of the comment on the evidence made by the District Judge in his charge to the jury, as exceeding permissible comment on the facts and partaking of the character of advocacy. Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321. An attempt is made to bring this case within the ruling of this Court in Buchanan v. United States, 244 F.2d 916, 919–920, C.A. 6th. We have read the charge carefully. Although it analysed the evidence unfavorably to the appellants and indicated that in the Judge's opinion the appellants were guilty, it also made it clear to the jury that the jury was the judge of the facts irrespective of the Court's review of them, that it was not his purpose to direct or induce the jury to make one verdict rather than another, that the jurors should make up their own minds about what the verdict should be, and that it was their responsibility to do so. Each case must, of course, depend upon its own particular facts and the overall evaluation of the charge as a whole. The right of the trial judge to comment on the evidence necessarily includes the right to comment unfavorably, so long as comment does not become advocacy and it is made clear to the jury that irrespective of such comment the ultimate determination of the facts is left to the jury. United States v. Kravitz, 281 F.2d 581, 584–585, C.A.

3rd. In our opinion, based upon a review of the charge in its entirety, the charge of the District Judge did not exceed permissible limits.

The judgments are affirmed.