**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**George POINDEXTER, Montez Day,**
**Defendants–Appellants.**

**Nos. 90–6030, 90–6260.**

United States Court of Appeals,
Sixth Circuit.

Submitted March 26, 1991.

Decided Aug. 15, 1991.

W. Hickman Ewing, Jr., U.S. Atty., Timothy R. DiScenza, Asst. U.S. Atty. (argued and briefed), Office of U.S. Atty., Memphis, Tenn., for U.S.

Robert C. Brooks (briefed), Memphis, Tenn., for George Poindexter.

Clifton Harviel, Fed. Public Defender (argued and briefed), Memphis, Tenn., for Montez Day.

Before KENNEDY and RYAN, Circuit Judges, and FEIKENS, Senior District Judge.[*]

RYAN, Circuit Judge.

George Poindexter and Montez Day appeal their jury convictions for possession with intent to distribute cocaine and use of a firearm in a drug trafficking crime. Poindexter also appeals his conviction of being a felon in possession of a firearm, although he makes no argument in support thereof.

Day raises the following issues:
1. Whether Day was unfairly prejudiced by the district court's admonishment to defense counsel not to comment during closing argument on the lack of fingerprint evidence; and
2. Whether the district court erred by denying Day's Fed.R.Crim.P. 29 motion for acquittal or a new trial based on the insufficiency of the evidence on Count II, the gun possession charge?

We conclude that the court abused its discretion in forbidding Day's counsel to argue the lack of fingerprint evidence, and that Day was, as a result, denied a fair trial. We shall, therefore, reverse Day's conviction on both counts.

Poindexter raises the following issues:
1. Whether Poindexter was unfairly prejudiced by the district court's ruling limiting defense counsel's opening statement;
2. Whether Poindexter was unfairly prejudiced by the district court's ruling limiting cross-examination;
3. Whether the district court erred in explaining to the jury why it was being instructed to disregard a prior statement by the defendant; and
4. Whether Poindexter was unfairly prejudiced by the district court's admonishment to codefendant Day's counsel not to comment during closing argument on the lack of fingerprint evidence?

We think Poindexter was not unfairly prejudiced by any of the district court's rulings. Although we believe the court abused its discretion in limiting closing argument, in light of the strong evidence of Poindexter's guilt we find this error was harmless. We shall, therefore, affirm Poindexter's conviction.

I.

Belinda Sellers, who resided on Los Angeles Street in Memphis, Tennessee, observed drug sales and gun use at 766 Los Angeles Street, Memphis, Tennessee, the home of defendants George Poindexter and Montez Day. After she reported what she had seen to the police, she was asked to make a controlled purchase of narcotics

* The Honorable John Feikens, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

and agreed to do so. With money supplied to her by the police, Sellers went to the defendants' home to make a drug buy where she met Poindexter and a man named Tarmooney. While inside the house, Sellers observed a "brick" of cocaine "the size of a paper towel." Poindexter and Tarmooney took Sellers' money and told her they needed a scale to weigh the cocaine. They left the room and returned about fifteen minutes later with a package of cocaine which they sold to Sellers. Based on this information, the police obtained a warrant to search the home.

The police officers who conducted the search testified that upon arriving at the home on January 5, 1990, to serve the warrant, they knocked at the door and yelled "police." There was no response, but when one of the officers heard shuffling inside, Officer Ross hit the door with a battering ram. On the second try, the door flew open. As the police entered, Poindexter fired a shot which struck Officer Robert Vaughn in the shoulder. The officers immediately arrested Poindexter.

During the search that followed, the police discovered sixteen grams of cocaine in the false bottom of a shaving cream can found in the bathroom. They also found three guns: a nine millimeter pistol in the front bedroom; a .32 caliber pistol on a lamp stand in the front room, and a .22 caliber pistol, the weapon used by Poindexter to shoot Vaughn. The police discovered Montez Day and a female visitor hiding in the closet of the rear bedroom.

Both Poindexter and Day were indicted on charges of possession of approximately sixteen grams of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count I), and knowingly carrying or using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count II). Additionally, Poindexter was charged with knowing possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count III). The defendants were tried by a jury in a joint trial.

During his opening statement, defense counsel attempted to explain that Poindexter used the gun in self-defense, and not in relation to a drug trafficking crime. The court refused to permit this claim, stating that self-defense is not relevant to a charge of using or carrying a firearm in relation to a drug trafficking crime.

During the government's case in chief, Sellers admitted, under cross-examination by Day's counsel, that she used crack cocaine approximately once a month over a four-month period. Counsel then attempted to impeach Sellers' veracity by referring to testimony she had given at a prior hearing in which she stated that she did not then recall using drugs. The prior testimony had begun with the question whether there was any reason Sellers would have trouble recalling dates. She was then asked whether she had trouble recalling because she used drugs. The court sustained the government's objection to this impeachment effort on the ground that defense counsel's cross-examination questions lifted the prior testimony out of context and were misleading and confusing.

On further cross-examination, Sellers, in response to an inquiry about how much cocaine she had purchased from Poindexter, answered that she had purchased an "eight ball." She stated that she did not know how many grams were in an eight ball but that she had turned over her entire purchase to the police. Later, defense counsel asked Officer Balee how much cocaine was in an eight ball and the officer responded that an eight ball is an eighth of an ounce, or 3.5 grams. The court sustained the government's objection when counsel asked the officer to convert the amount to grams. As an offer of proof, Officer Balee testified that Sellers turned over to the police only .8 grams. At a bench conference, defense counsel claimed that this line of questioning was relevant to Sellers' credibility since she had testified that she bought an eight ball, 3.5 grams, but turned over to the police only .8 grams. The court prohibited the questioning, however, because there was no evidence that Sellers knew how much an eight ball weighed.

Stephanie Simmons, Poindexter's girlfriend who was present during the raid, also testified. At a prior hearing in juvenile court, Simmons had testified that on the night of the raid the defendants "were talking about how much an ounce would cost and stuff like that and who would want to buy, and he going to hook them up with some people." At trial, Simmons denied ever having heard such a discussion. When confronted with her prior statement, she acknowledged having given it. Simmons also testified that the two defendants carried guns with them "all the time."

Officer Leo Hampton testified on direct examination that two pagers were found during the search and that Poindexter had admitted owning one of them. The court sustained defense counsel's objection to this testimony, as Poindexter's statement had not been furnished to defense counsel in discovery. Defense counsel then objected to the court explaining to the jury the basis for the ruling because the explanation suggested to the jury that the statement was reliable evidence excluded for merely technical reasons. The court overruled the objection and explained that the testimony was excluded under rules requiring the prosecution to provide the defense with statements by the defendant prior to trial.

On cross-examination of Officer Hampton, Poindexter's counsel attempted to explore Hampton's knowledge of the law requiring officers to knock and announce their business when executing a search warrant. The government objected. Defense counsel explained that he was attempting to challenge the credibility of the officers' testimony that they knocked at the door and announced their purpose by showing that they had a legal obligation to knock but a practical motive not to do so in order to prevent loss of evidence. The court sustained the objection, holding that it had already been determined at a pretrial hearing that the officers had knocked and that the search warrant was valid.

During closing argument, Day's counsel recalled that Officer Lonnie Thweatt had testified that it appeared to him that the shaving cream can in which the cocaine had been found had been dusted for fingerprints. Counsel then observed that the government had produced no evidence identifying the fingerprints. The court sustained the prosecution's objection to the lack of fingerprint testimony argument, stating that "[f]ingerprint evidence can only be introduced by an expert [who could] explain ... the science, the identification by fingerprints" and that an absence of fingerprint evidence did not "prove anything."

After the jury convicted both defendants on all counts, Day filed a Fed.R.Crim.P. 29 motion asking the court to set aside the jury verdict against him and grant him either a judgment of acquittal or a new trial. The district court, finding a jury submissible issue whether Day and Poindexter had possessed cocaine with intent to distribute from their home prior to and at the time of the raid, and finding that the presence of the firearms at the home during the drug transactions constituted "using" firearms under the law of the Sixth Circuit, denied the motion.

Following guilty verdicts on all counts, Day was sentenced to consecutive terms of six months' imprisonment on Count I and sixty months' imprisonment on Count II. Poindexter was sentenced to concurrent terms of thirty-nine months' imprisonment on Counts I and III, and a consecutive term of sixty months' imprisonment on Count II.

## II.

### A.

#### Day's Appeal

##### 1.

###### Closing Argument

Day argues that this court should reverse his conviction because the district court improperly limited closing argument by preventing Day's counsel from commenting on a lack of fingerprint evidence and improperly criticized Day's counsel before the jury.

During the cross-examination of Officer Thweatt by Day's counsel the following exchange occurred:

> Q. You received [the shaving cream can] as evidence there on the scene at 766 Los Angeles?
>
> A. Yes, sir.
>
> ....
>
> Q. Do you know whether there's been any effort made to fingerprint that can?
>
> A. It would appear so by the black powder all over it. That looks like the powder that the crime scene people use to raise fingerprints.

During closing argument, Day's counsel, referring to the foregoing testimony by Officer Thweatt, stated:

> Well, the next logical question that I pose to you, ladies and gentlemen of the jury is, whose fingerprints were found on that can?

The government objected and the court sustained the objection, stating:

> Let me just explain to the jury about fingerprints. Fingerprint evidence can only be introduced by an expert, and the expert would explain to you the science, the identification by fingerprints. So, it is improper to argue the absence of fingerprints proves anything. This should not be done. You certainly don't have any evidence to establish that fingerprints proved either of these defendants had anything to do with it, but [Day's counsel] is out of line when he argues that holds that up and says that you haven't proved my client guilty because there are no fingerprints. The expert will tell you that that isn't conclusive.

At a bench conference following the ruling, defense counsel contended that it was indeed proper for him to argue that if the fingerprints had belonged to his client, the prosecution likely would have brought out that information. The court responded:

> Don't you realize that that's an unfair statement? You know that there could be no fingerprints on there, and it didn't prove that your client didn't handle them. I don't want you to get into that. That's not fair. That's below the belt for you

defense lawyers to do it. You're not the only one that does it. That's not a search for the truth. That's just trying to fudge on the rules. You ought to be reprimanded for it.

> ....
>
> Look, y'all are on notice that this Judge is not going to permit that. I've stopped other people from doing it. It's an attack that, I think, goes to your ethics.

Day contends that these comments were loud enough for the jury to hear. Day objects to both the substance of this ruling and the court's comments, personally critical of counsel, made in connection with the ruling.

We recognize that the trial court has broad discretion to control closing argument. *United States v. Nabors*, 761 F.2d 465 (8th Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 123 (1985). We are also aware that a panel of this circuit previously upheld this district court's ruling foreclosing comment during closing argument concerning a lack of fingerprint evidence. *United States v. Quinn*, 901 F.2d 522 (6th Cir.1990). In *Quinn,* the court held that on the particular facts of that case, "[t]he district court did not exceed the boundaries of fair comment, particularly since there was no fingerprint testimony *or other proof establishing whether such evidence could or could not have been obtained." Id.* at 532 (emphasis added). In the present case, where there was evidence indicating that the can had been dusted for fingerprints, we do not believe the rhetorical question asked by defense counsel during closing argument as to whose fingerprints were on the can was improper. The court was correct that the defendants could not argue that "the absence of fingerprints proves anything," and that the absence of such evidence "isn't conclusive." Defense counsel, however, did not argue that the lack of fingerprint evidence *proved* anything, or was *conclusive.* He wished to argue only that the government's failure to introduce its findings, if any, concerning the presence or absence of fingerprints on a can that had

been dusted for fingerprints may raise a reasonable doubt as to whether Poindexter handled the can and, consequently, as to Poindexter's guilt. We think he might properly have done so.

In every criminal case, the mosaic of evidence that comprises the record before a jury includes both the evidence *and* the lack of evidence on material matters. Indeed, it is the absence of evidence upon such matters that may provide the reasonable doubt that moves a jury to acquit. The legitimacy of the inference Day's counsel wished to bring to the jury's attention—the absence of evidence of Day's fingerprints on an article containing contraband that had been dusted for fingerprints and which Day was charged with possessing—did not depend upon the conclusiveness of the inference. Neither did it depend upon the necessity that it "prove anything," merely that it had the tendency to do so. Fed.R.Evid. 401. We think the court's refusal to permit the argument was an abuse of discretion.

■ Day further argues that the court's "scathing" criticism of his counsel unfairly prejudiced him in front of the jury. Because Day did not move for a new trial, the record does not establish whether the jury actually heard the court's comments and thus whether the court's comments prejudiced Day before the jury. Sidebar conferences with attorneys conducted on the record and out of the jury's presence are an appropriate component of district court litigation. When, however, such conferences occur in the jury's presence, this court will assume that the conference is within the jury's hearing unless the record shows otherwise.

The government's case against Day was weak. There was no direct evidence that he possessed or sold drugs, and Simmons' testimony was inconsistent regarding whether she heard the two defendants discussing drugs. We cannot say that the district court's error in limiting closing argument and sharply chastising Day's counsel was harmless. We shall, therefore, reverse.

Our disposition of Day's drug conviction makes it unnecessary to address his argument concerning the sufficiency of the evidence on the firearm charge. That conviction must be reversed also, because it is dependent upon the guilty of the drug trafficking charge.

## B.
### Poindexter's Appeal
### 1.
### Limitations on Opening Statement

■ The district court has discretionary control over opening statements, including the power to exclude irrelevant matters. *United States v. Zielie,* 734 F.2d 1447, 1455 (11th Cir.1984), *cert. denied sub nom., Gustafson v. United States,* 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). Poindexter argues that the district court abused its discretion by ruling that counsel could not claim, with respect to the alleged violation of 18 U.S.C. § 924(c), that Poindexter used the gun in self-defense.

As we have said, section 924(c) prescribes a mandatory five year term of imprisonment for anyone who "during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm." It is indisputable that in shooting Officer Vaughn, Poindexter used a gun to protect his home in which he had previously sold and was currently storing drugs.

> If the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon *to protect himself* or intimidate others, whether or not such display or discharge occurred, then there is a violation of the statute.

*United States v. Stewart,* 779 F.2d 538, 540 (9th Cir.1985) (emphasis added), *cert. denied,* 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987). Because self-defense is irrelevant to a section 924(c) violation, the district court did not abuse its discre-

tion in preventing Poindexter's counsel from claiming self-defense.

## 2.

### Limitations on Cross–Examination

Federal Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The decision to exclude otherwise relevant evidence under Fed.R.Evid. 403 is ordinarily within the sound discretion of the trial court. *United States v. Ramirez*, 871 F.2d 582, 584 (6th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 127, 107 L.Ed.2d 88 (1989). This decision, based on the exercise of judgment in the context of the entire trial, ordinarily should not be overruled on appeal except for an abuse of discretion. *Id.;* *United States v. Stull*, 743 F.2d 439, 445 (6th Cir.1984), *cert. denied,* 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985).

### a.

### Cross–Examination of Sellers Regarding Prior Drug Use

■ Poindexter contends that the district court erred by prohibiting cross-examination concerning inconsistencies between Sellers' trial testimony regarding prior drug use and her testimony at a prior hearing. The court refused to allow this cross-examination because it was confusing and misleading, and the statements were not inconsistent. Although the cross-examination was conducted by counsel for codefendant Day, Poindexter's counsel joined in the objection to the ruling and thus Poindexter has standing to challenge this ruling on appeal.

On cross-examination, Sellers told counsel for Day that she had previously used drugs. Day's counsel then asked whether she *recalled* Poindexter's counsel asking her if she had used drugs. She responded:

A. No, I remember him accusing me. You can recall his statement.

Q. Do you recall [Poindexter's counsel] asking you while you were under oath:

"QUESTION: Do you have trouble recalling because you used drugs yourself?"

And answering: "No, I don't."

"QUESTION: You don't recall using drugs at all?

ANSWER: No, I don't."

Once again addressing the witness, Day's counsel then asked, "So, if those questions and answers I just read you were accurate, you didn't tell the truth, did you?" The prosecutor objected that "[w]hat he has asked her there is not what he's asking about here, her ability to recall." The court agreed. Then, with the jury excused, the court reviewed the prior testimony to which counsel had referred. At the prior hearing, Sellers testified that she could not "recall days or what was going on those days." Counsel then asked if there was any reason she had trouble recalling. The questions from the prior hearing quoted at trial, when read in context, ask Sellers whether her trouble recalling dates was related to drug use, *not* whether she recalled using drugs. We do not believe that the district court abused its discretion in finding that Sellers' prior testimony, that drug use did not affect her memory, was not inconsistent with her statement at trial that she had used drugs, or in holding that the discussion of drug use in the two statements would confuse the jury.

### b.

### Cross–Examination of Sellers Regarding Amount of Cocaine Purchased

Sellers testified on cross-examination that she purchased an "eight ball" of cocaine from Poindexter. She further testified that she did not know how much cocaine was in an eight ball but that the cocaine she purchased cost her $250. She testified that she gave the full amount of her purchase to the police. Later in the trial, defense counsel asked Officer Balee if an eight ball contained an eighth of an ounce of cocaine. The officer testified that he believed so. The prosecution objected

when defense counsel asked the officer to convert that weight into grams. Defense counsel argued that the weights were relevant to Sellers' credibility as she had testified that she bought an eight ball of cocaine, the equivalent of 3.5 grams, but had turned over only .8 grams to the police. The court sustained the objection to testimony regarding the weight of the cocaine on relevancy grounds as Sellers had not testified that she knew how much an eight ball weighed. Poindexter now argues that this evidence should have been admitted to show Sellers' bias and lack of credibility.

■ Although the scope of cross-examination is within the discretion of the trial court, the court should accord the defendant wide latitude for cross-examination to establish bias or prejudice, *Abeyta v. United States*, 368 F.2d 544, 545 (10th Cir.1966), and, generally, to challenge credibility, *United States v. Uramoto*, 638 F.2d 84, 87 (9th Cir.1980).

■ Although the proposed cross-examination might logically have been admitted as relevant to Sellers' credibility, we do not think the court's decision to exclude it was an abuse of discretion. The inference suggested by Poindexter—that the police allowed Sellers to retain and use a portion of the amount purchased—had, at best, only tenuous relevancy to show bias. Moreover, the convoluted mathematical conversion of ounces to grams, coupled with the absence of evidence of what the amount purchased by Sellers actually weighed, was substantially more likely to confuse the jurors than enlighten them concerning the desired inference. *See* Fed.R.Evid. 403.

### c.

### Cross–Examination Regarding Knock and Announce Requirements

■ On cross-examination, defense counsel asked Officer Hampton whether the law requires officers to knock and announce themselves when executing a search warrant. The prosecution objected to any inquiry about the technical aspects of the search warrant. The court sustained the objection as it had already ruled at the pretrial hearing that the police had knocked as required by law, so that this was not an issue for the jury to decide at trial.

Poindexter contends that showing the officers' motive not to knock for fear of losing evidence is relevant to establish that they entered suddenly and violently and that Poindexter used the firearm in self-defense, not in connection with a drug-trafficking crime. Self-defense, however, is not relevant in determining whether a defendant used or carried a firearm under section 924(c). "Use" and "carry" have been broadly construed to cover the present situation; ready access to a firearm in a place where drug trafficking occurs. *See U.S. v. Acosta–Cazares*, 878 F.2d 945, 952 (6th Cir.1989). Thus, the district court did not abuse its discretion in prohibiting cross-examination. The requirements of the warrant which had already been determined at the pretrial hearing and the incentives of police to ignore these requirements as self-defense was irrelevant to the issues in this case.

### 3.

### Instructions on Exclusion of Poindexter's Statement

■ Officer Hampton testified that two "Sky Pager" beepers were found during the execution of the search warrant and that Poindexter admitted owning one of them. Defense counsel objected to the testimony on the ground that Poindexter's statement had not been furnished to counsel during discovery. The court sustained the objection and told the jury to disregard the testimony. Poindexter's counsel then objected to the court explaining its ruling to the jury. Defense counsel believed that the court's explanation "implies it's a true statement but for technical reasons we're not going to let it in."

A trial judge "may ask questions and give comments upon the evidence, as he is not a mere moderator, but is in control of the trial to insure its proper conduct, so long as the comments and questions are fair and not designed to mislead." *United States v. Wade*, 364 F.2d 931, 935 (6th

Cir.1966). In commenting upon the evidence, the judge does not commit error simply by making a comment that may be favorable to one side. "The right of the trial judge to comment on the evidence necessarily includes the right to comment unfavorably, so long as [the] comment does not become advocacy and it is made clear to the jury that irrespective of such comment the ultimate determination of the facts is left to the jury." *United States v. Hawkins*, 295 F.2d 837, 840 (6th Cir.1961). As the judge's instruction accurately reflected the law and did not limit the jury's role as fact finder, the court did not err in giving its instruction. *United States v. Goble*, 512 F.2d 458 (6th Cir.), *cert. denied*, 423 U.S. 914, 96 S.Ct. 221, 46 L.Ed.2d 143 (1975).

#### 4.

#### Closing Argument

 Like Day, Poindexter claims that the district court abused its discretion in refusing to allow argument concerning the prosecution's failure to identify whose fingerprints, if any, were found on the shaving cream can in which the cocaine was found. The ruling Poindexter challenges was made during codefendant Day's closing argument. However, we believe Poindexter has standing to assert this challenge. Day's counsel gave the first closing argument because Day's name was listed first on the indictment. When the court stated it would not allow Day's counsel to argue the lack of fingerprint evidence in his closing argument, Poindexter's counsel joined in a bench conference and informed the court that he too had planned to make the same argument. Because the trial court ruled that neither defense counsel would be permitted to make this argument, Poindexter has standing to challenge the court's ruling.

We have previously discussed the district court's ruling on this matter. We found in Day's appeal that the court's ruling and its comments, presumably in the jurors' hearing, criticizing defense counsel's lack of ethics were errors that denied Day a fair trial. However, the evidence against Poindexter was very strong. Belinda Sellers testified that she made a controlled purchase of cocaine from Poindexter. Cocaine and guns were found in his home, and the officers present at the time of arrest all testified that Poindexter shot Officer Vaughn. Thus, the court's refusal to permit argument on the lack of fingerprint evidence and its criticism of Day's counsel does not warrant reversing Poindexter's convictions.

#### III.

For the foregoing reasons, Day's convictions are REVERSED and his case is remanded for a new trial. Poindexter's convictions are AFFIRMED.