956 F.2d 270
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Brenda G. ELDER and Randall S. Elder, Defendants-Appellants.
 Nos. 91-5605, 91-5606.
 United States Court of Appeals, Sixth Circuit.
 March 3, 1992.
 
 Before NATHANIEL R. JONES and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Convicted on federal drug trafficking and possession of firearms charges, and sentenced to lengthy prison terms, defendants Randall and Brenda Elder appeal both the convictions and the sentences. The defendants argue, among other things, that there was insufficient evidence to convict them of using and carrying a machine gun during and in relation to a drug trafficking offense; that thirty year sentences they received for possession of the machine gun constitute cruel and unusual punishment; and that the warrant used to search their home was insufficient as a matter of law. Finding none of the defendants' arguments persuasive, we shall affirm the convictions and sentences.
 
 
 2
 * The defendants, who are husband and wife, occupied a house in Bradley County, Tennessee. Officers from the local sheriff's department conducted a search of the house pursuant to a search warrant. Near the kitchen door they found a loaded 20-gauge shotgun. An officer who searched the master bedroom found an unloaded Sten machine gun sticking out from under a double bed. A homemade silencer built to fit on the muzzle was found beside the machine gun.
 
 
 3
 Mr. Elder was discovered hiding inside a bedroom closet. He tried, unsuccessfully, to prevent the police from entering the closet. A search of Mr. Elder's person, conducted after he had lost the tug of war, yielded $920 in cash. The closet itself proved to contain three rifles, three handguns, and ammunition for several of the guns. The officers also found a pouch containing four and a half ounces of cocaine.
 
 
 4
 Cash in the amount of $6,000 was found hidden in the bottom of a lamp. Also found were a set of scales, inositol, spoons, and Ziploc baggies set up on a sewing table just outside the master bedroom. Continued searching revealed still more evidence of drug trafficking, including five bags of marijuana, one of which was next to two guns sandwiched between the mattress and the box springs on Mr. Elder's side of the bed.
 
 
 5
 Mr. and Mrs. Elder were indicted for (1) conspiracy to distribute and possession with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a) and 846; (2) knowing and intentional possession with intent to distribute cocaine hydrochloride and aiding and abetting each other therein in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (3) being convicted felons in possession of firearms in violation of 18 U.S.C. § 922(g)(1) and (2); (4) possession of an unregistered machine gun in violation of 26 U.S.C. § 5861(d) and 18 U.S.C. § 2; (5) using and carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) and (2); and (6) using and carrying a machine gun during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) and (2). A jury found both defendants guilty on all counts.
 
 
 6
 The district court sentenced Mr. Elder to imprisonment for 37 months on Counts 1 through 4, the sentences to run concurrently. Mrs. Elder received concurrent 30 month sentences on these counts. Both defendants received 60-month sentences on Count 5 and 360-month sentences on Count 6. These sentences were concurrent with each other but consecutive to the sentences for Counts 1 through 4.
 
 
 7
 The Elders have perfected timely appeals.
 
 II
 
 8
 The defendants argue that there was insufficient evidence to convict them of using and carrying the machine gun during and in relation to a drug trafficking offense. There was evidence that the weapon had been in the house for only a matter of hours before the search, and the defendants suggest that the government failed to show that it had not been left there without their knowledge.
 
 
 9
 A witness named Terry Forgey testified that three men had come to the Elder residence the night before the search and offered to sell the machine gun to Mr. Elder and Mr. Forgey. Later, when the three men were getting ready to leave, Mr. Forgey asked about the gun. One of the men said that he had "put the gun in the car." The implication of Mr. Forgey's testimony was that someone had planted the gun under the bed instead.
 
 
 10
 Mr. Forgey, a friend of the Elders, had previously been convicted of drug trafficking and receiving stolen property. The jury obviously did not have to believe his testimony. Reviewing the evidence in the light most favorable to the government, as we must, we conclude that the jury was entitled to believe that the defendants knew that they had a machine gun sticking out from under their marital bed.
 
 
 11
 The defendants also contend that there was insufficient evidence to show use of the machine gun during and in relation to drug trafficking. We reject the contention. The Elder house appears to have been a classic example of a "drug fortress" in which an arsenal of weapons was kept available to defend drug operations if necessary. When a drug trafficker has "ready access" to a firearm in such a situation, the firearm is "used" within the meaning of that term in § 924(c). United States v. Poindexter, 942 F.2d 354, 362 (6th Cir.), cert. denied, 112 S.Ct. 615 (1991). The government is not required to show that the firearm was carried, brandished or displayed. United States v. Acosta-Cazares, 878 F.2d 945, 952 (6th Cir.), cert. denied, 493 U.S. 899 (1989).
 
 III
 
 12
 The defendants argue that the imposition of a 30-year non-parolable sentence pursuant to 18 U.S.C. § 924(c)(1), which makes such a sentence mandatory, constituted cruel and unusual punishment in violation of the Eighth Amendment. The Supreme Court's recent decision in Harmelin v. Michigan, 111 S.Ct. 2680 (1991), teaches that the mandatory nature of a sentence cannot itself make the sentence unconstitutional. The Harmelin majority agreed that the Eighth Amendment prohibits, at most, "only extreme sentences that are 'grossly disproportionate' to the crime." Harmelin, 111 S.Ct. at 2705 (separate opinion of Justice Kennedy), quoting Solem v. Helm, 463 U.S. 277, 288 (1983). Considering the harm that machine guns can inflict, and the fact that a 30-year sentence is mandatory only if such a weapon was used or carried during and in relation to a "crime of violence or drug trafficking crime," we cannot say that the sentence imposed here was "grossly disproportionate" to the offense. Cf. Hutto v. Davis, 454 U.S. 370 (1982) (upholding 40-year sentence for possession of approximately 9 ounces of marijuana).
 
 IV
 
 13
 The district court denied a motion to suppress all evidence seized during the search of the house, and the defendant's contend that the court erred in doing so. First, they argue, the search warrant was defective because it was based on stale information.
 
 
 14
 The affidavit supporting the application for a warrant contained information from an informant who said he had witnessed drug trafficking activities at the Elder residence "within the last three days." In a case of suspected ongoing drug trafficking activity, a lag-time of three days does not foreclose the magistrate from concluding that probable cause exists for issuance of the warrant. Cf. United States v. Henson, 848 F.2d 1374, 1382 (6th Cir.1988), cert. denied, 488 U.S. 1005 (1989) (where affidavit recites activity that is continuous or protracted, time is of less significance than it might otherwise be).
 
 
 15
 The defendants also argue that the warrant did not sufficiently identify the place to be searched and the things to be seized. The warrant pin-pointed the place to be searched as follows:
 
 
 16
 "From Georgetown Road and Harrison Pike travelling west on Harrison Pike 4 8/10s of a mile will be a gravel driveway on the left side of Harrison Pike. A black mailbox bearing the number 407 and the name Elder on it will be a two-story house with white trim and a pond in front."
 
 
 17
 This description was not insufficient. Cf. United States v. Hassell, 427 F.2d 348, 349 (6th Cir.1970) (description of place to be searched as "Howard Hassell farm" sufficient).
 
 
 18
 The search warrant did not specify the location within the house where it was anticipated that drugs would be found. But where there is reliable information that drug trafficking is being conducted at a particular residence, there is no reason for the warrant not to authorize a search of the entire house.
 
 
 19
 As to the naming of the items to be seized, the warrant specified "cocaine." Cocaine is what the officers found. They were clearly entitled to seize it, just as they were entitled to seize contraband found with it.
 
 
 20
 The district court did not abuse its discretion in ruling on the suppression motion without first conducting an evidentiary hearing. The district court obviously did not believe that resolution of the issue that was presented required such a hearing, and we cannot say the court was wrong in this.
 
 V
 
 21
 The defendants argue that the district court erred in refusing to reveal the identity of the police informant whose information led to issuance of the search warrant. In the argument they presented to the district court, the defendants maintained that they were entitled to know who the informant was because he "would be either a percipient witness or a participant in the criminal transaction." In the argument presented to this court, the defendants maintain that the informant might have had some information that would have helped them prove that the machine gun was planted in their house unbeknownst to them. Even if we were to allow the defendants to make this claim for the first time on appeal, it would be too speculative to overcome the strong presumption in favor of protecting the anonymity of informants. Roviaro v. United States, 353 U.S. 53 (1961).
 
 VI
 
 22
 Mrs. Elder challenges her conviction under Count 6 for using and carrying a machine gun during and in relation to a drug trafficking offense. The district court instructed the jury that it could find Mrs. Elder guilty under the Pinkerton rule, which allows a party to a continuing conspiracy to be held responsible for the reasonably foreseeable act of a co-conspirator "when the substantive offense is committed by one of the conspirators in furtherance of the [conspiracy]." Pinkerton v. United States, 328 U.S. 640, 647 (1946).
 
 
 23
 Mrs. Elder contends that the district court erred in refusing to give a requested instruction emphasizing that to find her guilty pursuant to Pinkerton, the jury would have to find that the machine gun was used during and in relation to the drug trafficking offense. She argues that the court's instructions may have led the jury to believe that it could convict her if any other firearm was used.
 
 
 24
 Mrs. Elder's counsel did not object to the jury instructions at trial, and instructions cannot normally be challenged for the first time on appeal. Jones v. Lewis, slip op. at 6, --- F.2d ----, ---- (6th Cir. Feb. 25, 1992); Fed.R.Civ.P. 51. The jury was told that Counts 5 and 6 were separate offenses, and that Count 6 related only to the machine gun. There was no plain error in the instructions as given, and that is where our review ends.
 
 
 25
 Finally, Mrs. Elder challenges the district court's refusal to depart downward from the guideline sentencing range. Refusal to depart downward from a range properly computed under the guidelines is not appealable. United States v. Pickett, 941 F.2d 411, 417-18 (6th Cir.1991).
 
 
 26
 AFFIRMED.