86 F.3d 1156
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Louis ROMAIN, Defendant-Appellant.
 No. 95-3732.
 United States Court of Appeals, Sixth Circuit.
 May 22, 1996.
 
 Before: BOGGS and MILBURN, Circuit Judges; and QUIST, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Louis Romain, appeals from a jury verdict finding him guilty of bank fraud, wire fraud, transportation of stolen funds, money laundering and false personation of a foreign diplomat. Defendant raises several issues for review. For the reasons stated below, we affirm.
 
 I.
 
 2
 The St. Clare Parish Federal Credit Union was a federally-insured credit union. Robert Jansen was employed by the credit union as its treasurer-manager. The St. Clare Parish Federal Credit Union had an account at the First National Bank of Ohio and also had funds deposited with Corporate One. Jansen was authorized to wire transfer credit union funds between various bank accounts.
 
 
 3
 In 1992, Raymond Smith, an examiner for the National Credit Union Administration, examined the St. Clare Parish Federal Credit Union's financial records and discovered a discrepancy. Smith asked Jansen about the discrepancy and was informed that Jansen had sent $80,000.00 to AMRO First International Limited, as an investment.
 
 
 4
 Smith telephoned AMRO First International Limited and spoke with a man who identified himself as Romain. Smith stated that he was a federal credit union examiner and that he wanted to discuss the St. Clare investment. Romain responded, "I am sorry, I don't know you," and hung up.
 
 
 5
 Jansen gave Smith records documenting that he had caused the First National Bank to wire transfer $80,000.00 in the name of the credit union to AMRO First International. The details of the transaction were set forth in a promissory note. At trial, Jansen testified that on May 15, 1992, he received a faxed copy of the promissory note signed by Ambassador Louis Romain and Alvin W. Wood. The promissory note stated in part:
 
 
 6
 Thirty Days after May 15, 1992, for value Received, namely transfer of $80,000.00 (eighty-thousand USA Dollars) pay to the order of ST. CLARE CREDIT UNION, ATTENTION ROBERT JANSON [sic], Cleveland, Ohio at FIRST NATIONAL BANK OF OHIO, CLEVELAND, OHIO, the sum of $100,000.00 (One hundred thousand USA dollars).
 
 
 7
 The promissory note contained instructions for wiring the funds into National Westminister Bank, the receiving bank. The funds were to be sent "For the attention of Mrs. P. Lindenbaum, V.P."
 
 
 8
 Mrs. Lindenbaum was a customer service representative for National Westminster Bank; she was never the bank's Vice President. Mrs. Lindenbaum opened the AMRO First International Limited account for Romain but had no involvement with Romain or AMRO thereafter.
 
 
 9
 Co-defendant, Marie Lah, connected Jansen to Alvin Wood and Romain. Marie Lah testified that on May 14, 1992, she received a faxed copy of the promissory note bearing only Wood's signature. On May 15, 1992, Lah received a faxed copy of the note with the signatures of both Wood and "Ambassador Louis Romain." The promissory note was faxed to Lah, Jansen and Wood. Lah gave the document to Jansen. On May 18, 1992, Romain wire-transferred $30,000.00 into an account belonging to Lah's son.
 
 
 10
 A search of the Department of State official records indicated that Mr. Louis Romain had never been accepted by the United States Government as a "diplomat or counselor, officer, agent, or employee of an embassy, consultant or admission to the United Nations or other international organization."
 
 
 11
 Detective Michael Govanello, of the Lyndhurst, Ohio, Police Department, investigated the complaint of missing funds from the credit union. Detective Govanello telephoned "Ambassador Romain." When asked if the $80,000.00 was in his possession, Romain responded that $10,000.00 had been sent to Wood and $30,000.00 had been sent to Lah at Wood's request. Detective Govanello asked about the status of the remaining $40,000.00 and Romain replied that he would have to "check the records" and "get back." Approximately five or six days later, Detective Govanello contacted Romain and was told, "[t]he money is gone. I don't have anything more to say to you."
 
 
 12
 On May 20, 1994, defendant was indicted with Marie D. Lah and Alvin W. Wood by the grand jury for the Northern District of Ohio. Defendant was charged with bank fraud, wire fraud, transportation of stolen funds, money laundering and false personation of a foreign diplomat. After a jury trial, defendant was convicted of all counts. Defendant moved for judgment of acquittal or for a new trial on May 8, 1995. The district court denied the motion and sentenced defendant on June 20, 1995.
 
 II.
 
 13
 Defendant sets forth several arguments challenging his conviction. First, defendant argues that he was denied due process because the district court did not allow his attorney to make certain arguments during closing argument. Second, defendant argues that the district court erred in admitting challenged hearsay evidence. Third, defendant argues that the federal bank fraud statute is not applicable to this factual situation.
 
 
 14
 This court reviews a district court's ruling pertaining to closing argument for abuse of discretion. United States v. Dye, 508 F.2d 1226, 1231 (6th Cir.1974), cert. denied, 420 U.S. 974, 95 S.Ct. 1395 (1975). The factual components of a district court's evidentiary determinations are reviewed under the abuse of discretion standard. Miller v. Field, 35 F.3d 1088, 1090 (6th Cir.1994). However, the legal components of those determinations are reviewed de novo. Id. A district court's determination whether proffered evidence constitutes hearsay is reviewed de novo. United States v. Levy, 904 F.2d 1026, 1029 (6th Cir.1990), cert. denied sub nom. Black v. United States, 498 U.S. 1091, 111 S.Ct. 974 (1991).
 
 Closing Arguments
 
 15
 Defendant contends that he was denied due process because the district court barred his attorney from making "certain valid points" during the summation.[2] During cross examination, witness Lah testified that the copy of the promissory note introduced by the government did not bear a fax legend indicating when it was sent. Lah also testified she had copies of the promissory note that contained fax notations indicating the document was faxed on May 15, 1992. During re-direct examination, Lah testified she would be able to produce those documents. The promissory note was later admitted into evidence as Government's Exhibit 3. The defense did not object to the admission of the document even though it failed to contain a fax legend. During closing arguments, defense counsel tried to convince the jury that Lah had not been truthful with respect to her representation about an alternative copy with the legend. During summation, defense counsel argued:
 
 
 16
 Now, Marie Lah stood here in court and identified some of these documents, and she said that at least those that I think that are labeled 3-A, -B, and -C, that she had gotten them around the 14th or 15th of May, and in a sense of bravado, that turned out to be false. The government responded by indicating, Oh, yes, she said I have the original document which has on it my--I mean the fax indications showing when I received it, the 14th and 15th.
 
 
 17
 The government asked her, "Can you bring that in? And she assured you--she didn't assure me because I knew it was false--she assured you that they were readily available, and all of you, not me, expected that document to be brought back here today.
 
 
 18
 And she didn't indicate that she lived in Europe or anywhere else. It was in Cleveland. I estimate you can go anywhere in Cleveland and back within 35 to 40 minutes at the most. The fact she didn't bring it back is an indication, as I see it, of the quality of the government's case.
 
 
 19
 Trial Transcript at pp. 352-53. At this point, the government requested a side bar and objected to defense counsel's statements. The record reveals that Lah had delivered the document bearing the fax legend to the courthouse, but the specific document with the fax legend had not been introduced into evidence. The district court instructed defense counsel to avoid further argument about the missing document.
 
 
 20
 On appeal, defendant argues he was denied due process because the district court prevented defense counsel from commenting on the government's failure to produce a "critical document." In support of his position, defendant cites United States v. Poindexter, 942 F.2d 354 (6th Cir.1991), cert. denied, 502 U.S. 994, 112 S.Ct. 615 (1991).
 
 
 21
 We do not agree that defendant was prejudiced by the district court's ruling. A district court has broad discretion in controlling closing argument. Poindexter, 942 F.2d at 359. In this case, defense counsel used oral argument which was untrue--that Ms. Lah had not produced the document with the fax legend. Notwithstanding defendant's fervent assertions to the contrary, defense counsel was indeed "out-of-bounds" in his attempt to argue that Lah's statements regarding the faxed documents were not truthful. The district court was careful not to discuss counsel's conduct in the presence of the jury. We believe the district court properly exercised its discretion with respect to overseeing closing arguments.
 
 Hearsay
 
 22
 Defendant further argues that his due process rights were violated by the admission of unconstitutional hearsay evidence. The district court admitted the contested statements after finding that they were admissible co-conspirator statements, made in furtherance of the conspiracy. The five statements admitted over defendant's hearsay objections are as follows:
 
 
 23
 1. Prior to the transaction, Lah told Jansen that the $80,000.00 would be returned with a $20,000.00 profit within 30 days;
 
 
 24
 2. Lah told Jansen that the investment vehicle being used for the $80,000.00 was a "large scale roll account" that could generate an unusually large return even on a small investment;
 
 
 25
 3. Lah told Jansen that the defendant was a licensed investment banker and an ambassador;
 
 
 26
 4. Wood told Lah that he and the defendant would "prepare another document" (which ultimately became Government's Exhibit 3, the May 15, 1992 promissory note) in response to Lah telling Wood that Jansen would not go forward with the transaction without such a document;
 
 
 27
 5. Lah told Jansen that the purpose of the May 15, 1992 promissory note (Government's Exhibit 3, which now contained the terms that she and Jansen had discussed) was to confirm that Jansen would in fact receive $100,000.00 at the end of the 30 days.
 
 
 28
 Federal Rule of Evidence 801(d)(2)(E) provides that "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Before the statement of a co-conspirator can be admitted, the government must establish "(1) that a conspiracy existed, (2) that the defendant was a member of the conspiracy and (3) that the co-conspirator's statements were made in furtherance of the conspiracy." United States v. Pierce, 62 F.3d 818, 827 (6th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 965 (1996) (citations omitted); United States v. Enright, 579 F.2d 980, 986 (6th Cir.1978). A district court must make these findings under a preponderance of the evidence standard. Bourjaily v. United States, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778 (1987).
 
 
 29
 In this case, the district court found, by a preponderance of the evidence, that a conspiracy existed to defraud the credit union. The district court also found there was sufficient proof that defendant participated in the conspiracy and that the contested statements were made in furtherance of that scheme. The district court's findings were based upon independent evidence introduced at trial and on the contested statements themselves.[3] In its written Opinion and Order,[4] the district court listed 31 items of evidence in support of its finding that the statements were properly admitted into evidence. The following items of proof were included in the court's opinion:
 
 
 30
 "Ambassador Louis Romain" is listed as the president of AMRO and his signature appears in the signature line above that designation on the promissory note;
 
 
 31
 the promissory note contained specific direction that $80,000.00 was to be sent to AMRO's account at Westminster Bank in New York and provided information pertaining to AMRO's account at Westminster Bank;
 
 
 32
 included in the promissory note's account instructions was the instruction to direct the wire transfer of the $80,000.00 to the attention of "Mrs. P. Lindenbaum V.P";
 
 
 33
 Mrs. Lindenbaum is a Westminster Bank account clerk who testified that she dealt with the defendant in New York, that the defendant set up and was the authorized signatory for the AMRO account, and that the defendant was aware at all times that Mrs. Lindenbaum is not and never has been a Vice President of the Bank;
 
 
 34
 on Monday May 18, 1992, the defendant disbursed the funds to several sources, including $30,000.00 by wire to Marie Lah (via a deposit in her son's IOLTA account) and $5,000.00 to Alvin Wood by check;
 
 
 35
 over the next month, the defendant spent $40,000.00 out of the AMRO account for personal expenses;
 
 
 36
 Robert Jansen and Marie Lah testified that they spoke to the defendant in order to ascertain when the funds would be returned and that he continued to assure them that they would be returned, even after having transferred the funds out of the account;
 
 
 37
 We find that the district court properly admitted the co-conspirator statements based upon its conclusion that they were not hearsay.
 
 Violation of Bank Fraud Statute
 
 38
 Defendant further contends that the Federal Bank Fraud Statute, 18 U.S.C. § 1344, was not violated in this instance. Defendant argues that Robert Jansen, the credit union treasurer, did not have authority to invest the credit union funds with AMRO First International, Ltd. Therefore, defendant argues that Jansen stole the funds from the credit union. The defendant's subsequent acquisition of these funds from the "thief" could not, it is argued, be regarded as fraudulent.
 
 
 39
 This Court is unwilling to accept the defendant's supposition. Congress has made it an offense to knowingly execute, or attempt to execute, "a scheme or artifice" to "defraud a financial institution" or "obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. Viewing the evidence in the light most favorable to the prosecution, as we must, we hold that a rational jury could have concluded that defendant violated the bank fraud statute. The evidence revealed that defendant and his cohorts intended to acquire monies under the custody or control of the St. Clare Parish Federal Credit Union. The bank documents indicate that the funds were transferred directly from the credit union's bank account at the First National Bank to the defendant's AMRO account. Jansen was authorized to have credit union funds wire transferred, and Jansen's testimony indicates that he believed the investment was FDIC insured. The promissory note provided for "repayment" to the credit union in the amount of $100,000.00. Misrepresentations were made to Jansen to induce him to invest the funds. We believe the record contains ample support for a finding that the defendant violated the federal bank fraud statute.
 
 III.
 
 40
 For the reasons stated above, the defendant's conviction is AFFIRMED.
 
 
 
 *
 The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [2]
 This assertion is set forth in defendant's brief as Arguments I and IV
 
 
 [3]
 Out-of-court statements may be considered when determining whether a conspiracy existed. Bourjaily, 483 U.S. at 178, 107 S.Ct. 2780. However, the statements should be supported by some independent corroborating evidence of the defendant's participation in the conspiracy. Pierce, 62 F.3d at 827
 
 
 [4]
 The district court's Opinion and Order denied defendant's motion for judgment of acquittal or for new trial