Jonathan GREER, Appellant,

v.

UNITED STATES, Appellee.

No. 94–CF–1418.

District of Columbia Court of Appeals.

Argued Sept. 18, 1996.
Decided July 17, 1997.

Sandra K. Levick, Public Defender Service, with whom James Klein, Samia Fam, and M.L. Armstrong, Public Defender Service, were on the brief, for appellant.

Mary-Patrice Brown, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, and James S. Sweeney, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY and RUIZ, Associate Judges.

TERRY, Associate Judge:

Appellant Greer was convicted of distributing cocaine.[1] On appeal he makes several arguments for reversal, but we need consider only one. We hold that the trial judge erred in instructing the jury that it could not base its verdict "on evidence that has not been presented," and that this error, viewed in the context of the entire trial, was not harmless. We therefore reverse the conviction and remand the case for a new trial.

1. D.C.Code § 33–541(a)(1) (1989).

## I

In the early morning hours of October 7, 1993, shortly after 3:00 a.m., four undercover Metropolitan Police officers went to an alley in the 4400 block of 15th Street, N.W. They had been sent there by their sergeant to see if a man known as "Poochie" was selling drugs in the garage behind 4417 15th Street. The officers were all in plain clothes and were riding in an unmarked car. Officer Collis Timlick went to the garage door and knocked, but when no one answered, Timlick and the others left the alley and went back to the corner of 15th and Allison Streets. Timlick and Officer Cassandra Adams got out of the car and approached a man who was standing on the corner. Officer Timlick asked this man if he knew Poochie, but the man said no.

As the officers were about to leave, however, another car pulled up and stopped near the corner. The man with whom Timlick had been talking walked over to the car and had a brief conversation with one of its passengers, pointing to Officer Timlick as he spoke. The passenger then got out of the car and walked over to Timlick. When Timlick asked if his name was Poochie, he said that it was. Timlick then said he wanted a "twenty" (a $20 rock of crack cocaine), and Poochie replied, "Wait here." The officer noticed at that point that Poochie "had some teeth missing in the front." [2]

Poochie left and returned a few moments later with several small white rocks wrapped in newspaper. Officer Timlick gave him two $10 bills whose serial numbers had been pre-recorded, and Poochie gave him several of these rocks in exchange. Officer Adams, whose job it was to observe the transaction, was no more than two to four feet away while it was going on. [3] Poochie then turned and headed down 15th Street, and Officer Timlick got back into the unmarked police car and radioed his sergeant to tell him what had happened. Timlick gave the sergeant a de-tailed description of Poochie, including the missing teeth.

The four officers then drove around the neighborhood looking for Poochie, but to no avail. About an hour later, they went back to the rear of 4417 15th Street, and Officer Timlick knocked on the garage door once again. A voice answered, "What?" Officer Timlick said, "Poochie, twenty," and the same voice, which Timlick recognized as Poochie's, replied, "No happening." Appellant was thereafter placed under arrest. [1] The police did not recover the pre-recorded $10 bills that were used to purchase the drugs.

In addition to Officers Timlick and Adams, the government called Detective Steven Finkelberg to testify as an expert in drug trafficking. Detective Finkelberg said it was "not unusual" for the police not to find any additional drugs or pre-recorded funds when arresting a suspected drug seller. He explained that drug sellers often hide their stash of narcotics and the money derived from their sales so as to avoid detection by the police.

Appellant did not present any evidence. The defense theory was that the officers could not find the person who had sold the drugs and therefore had arrested appellant because he was a convenient target. Defense counsel challenged Officer Timlick's credibility on cross-examination by pointing out that appellant had no drugs or pre-recorded money in his possession when arrested, and that no scientific or physical evidence, such as fingerprints, photographs, or videotape, existed to corroborate Timlick's account of what happened. Counsel also highlighted certain inconsistencies between the testimony of Officer Timlick and that of Officer Adams, particularly about the length of time that elapsed between the sale and the arrest and about what the officers had done during that period.

---

2. Officer Timlick identified appellant Greer at trial as the man he knew as Poochie.

3. The other two officers remained in the car.

4. No evidence was presented about who or what was inside the garage because the court had granted a pre-trial motion to suppress that evidence, including all on-the-scene identification testimony. The government did not appeal from that ruling.

## II

During her opening statement, defense counsel told the jury that the pre-recorded money used in the transaction was not found on appellant, no recording was made of the broadcast description of the seller, no video-tape was made of the transaction, and no incriminating fingerprints were lifted from the drugs. The prosecutor objected to these remarks, and his objection was sustained. The court told defense counsel, "You are saying what the evidence is not going to be, and there is no legal [requirement] to produce the evidence." The court then gave the following instruction at the prosecutor's request:

Ladies and gentlemen, the lawyers' comments are not evidence, the opening arguments are not evidence. The only evidence which you can consider is that which is introduced through the testimony of the witnesses and any exhibits that are received into evidence.

Later, on cross-examination, defense counsel attempted to ask Officer Timlick whether he knew that he could have had another officer videotape the transaction from an observation post. The prosecutor's objection to this question was sustained. Defense counsel argued that it was important for the jury to know that other procedures "are available—not that they have to use them but that they are available." The court replied, however, that such evidence would imply "that the police are under some legal obligation to perform this task in certain ways," agreeing with the prosecutor's comment that "he [Timlick] is not in charge of interpreting police procedures or what police procedures are...." Counsel was allowed to ask only whether the alleged transaction was video-taped or photographed, to which the officer answered, "Not to my knowledge."

Officer Timlick, when testifying about the description of Poochie that he gave over the radio, explained that he used an unrecorded broadcast channel in order to avoid interfering with emergency "911" calls and to prevent interception by civilians with police scanners. On cross-examination, defense counsel asked the officer, "And you can do this [give a description of the suspect], give them [the arrest team] this information on a recorded channel or an unrecorded channel, right?" The court sustained the prosecutor's objection to the question. The only information defense counsel was permitted to elicit was that an unrecorded channel would produce "no tape of that description."

In her closing argument, defense counsel said:

Now, you didn't see any videotape of any drug transaction, ladies and gentlemen. You didn't see any photographs, arrest photographs, or any photographs of this so-called drug sale going on, and you didn't hear any recording, any tape recording for any lookout being given for Mr. Greer so you can say yes, there it is, that's what the person looked like. You didn't hear that, ladies and gentlemen.

And you better believe, ladies and gentlemen, that if the government—if there had been that evidence presented to you, there would have been a big deal being made of that right now.

Ladies and gentlemen, I told you at the beginning of this case—

At this point the court, *sua sponte*, interrupted the argument and called both counsel to the bench. At the bench, the court agreed with the prosecutor that defense counsel's argument about the absence of corroboration was improper because it was a "missing evidence" argument, adding that "[t]here has been no evidence that there was any reason for videotape, that is why I excluded all of that." Defense counsel pointed out that the standard "red book" instruction discusses the presence or absence of corroboration as affecting a witness' credibility.[5] The prosecu-

**5.** The standard instruction on credibility of witnesses states in part:

In determining whether the government has established the charge against the defendant beyond a reasonable doubt, you must consider and weigh the testimony of all the witnesses who have appeared before you.

You are the sole judge of the credibility of the witnesses. In other words, you alone are to determine whether to believe any witness and the extent to which any witness should be believed.

In reaching a conclusion as to the credibility of any witness, you may consider any matter

tor countered that it was necessary to get the court's permission to argue missing evidence and asked for a curative instruction. The court then gave the following instruction to the jury before defense counsel resumed her closing argument:

> The jury should base its decision based on the evidence which has been presented, and not on evidence that has not been presented.

## III

■ "Reasonable doubt is a doubt arising from the evidence, or from a lack of evidence, after consideration of all the evidence." *Bishop v. United States*, 71 App. D.C. 132, 138, 107 F.2d 297, 303 (1939). "Indeed, it is the absence of evidence upon [material] matters that may provide the reasonable doubt that moves a jury to acquit." *United States v. Poindexter*, 942 F.2d 354, 360 (6th Cir.), *cert. denied*, 502 U.S. 994, 112 S.Ct. 615, 116 L.Ed.2d 637 (1991); *see United States v. Thompson*, 37 F.3d 450, 453 (9th Cir.1994). Thus, in assessing whether the government has met its burden of proving guilt beyond a reasonable doubt, the jury may properly consider not only the evidence presented but also the lack of any evidence that the government, in the particular circumstances of the case, might reasonably be expected to present.

■ For this reason, defense counsel may appropriately comment in closing argument on the failure of the government to present corroborative physical evidence. *Hughes v. United States*, 633 A.2d 851, 852 (D.C.1993); *United States v. Hoffman*, 296 U.S.App. D.C. 21, 26, 964 F.2d 21, 26 (1992); *United States v. Poindexter, supra*, 942 F.2d at 360. As the court said in *Hoffman*, "[i]t is permissible for a defense attorney to point out to the jury that no fingerprint evidence has been introduced and to argue that the absence of such evidence weakens the Government's case...." 296 U.S.App.D.C. at 26, 964 F.2d

that may have a bearing on the subject.... *You may consider whether the witness has been contradicted or corroborated by other credible evidence.*

at 26. "[T]he absence of [physical] evidence is a relevant 'fact' which properly [can be] argued to the jury." *Id.* at 24, 964 F.2d at 24.[6]

In *Hoffman*, a drug case, defense counsel urged the jury to infer from the absence of fingerprint evidence that such evidence could have been obtained by the police and that it would have weakened the government's case. The trial court told the jury to disregard this argument because there was no evidence that the plastic bags containing the narcotics had been tested for fingerprints or that any prints had been found. The Court of Appeals upheld that ruling and affirmed the conviction. In doing so, however, the court indicated that defense counsel's argument would have been permissible if a proper foundation had been laid. Because counsel had not "laid any evidentiary foundation for those assertions—by, for example, asking one of the officers on cross-examination whether the plastic bags were (or could have been) tested for fingerprints, and whether standard procedure required such testing—[counsel's] argument was improper." *Id.* at 25, 964 F.2d at 25.

In *United States v. Poindexter, supra*, a drug possession case, the Sixth Circuit reversed the conviction on the ground that the trial court had improperly prohibited defense counsel from arguing that the lack of fingerprint evidence raised a reasonable doubt about whether the defendant had ever touched the container of the drugs, which in turn could raise a reasonable doubt about his guilt. "In every criminal case, the mosaic of evidence that comprises the record before a jury includes both the evidence *and* the lack of evidence on material matters." 942 F.2d at 360 (emphasis in original). The evidentiary worth of the absence of corroboration, the court said, did not "depend upon the necessity that it 'prove anything,' merely that it had the tendency to do so." *Id.*

Criminal Jury Instructions for the District of Columbia, No. 2.11 (4th ed.1993) (emphasis added).

6. This court in *Hughes, supra*, 633 A.2d at 852, said that *"Hoffman* was correctly decided."

■ It is in the context of these cases, and others like them, that we must consider appellant's claim of instructional error. There can be no doubt that the court's instruction that the jury "should base its decision on the evidence which has been presented, and not on evidence that has not been presented," is contrary to the rule established in *Bishop* that a reasonable doubt may arise "from the evidence, *or from a lack of evidence,* after consideration of all the evidence." 71 App. D.C. at 138, 107 F.2d at 303 (emphasis added). Because a defendant is entitled to have the jury consider the lack of corroborating evidence in the government's case, the trial court erred in giving this instruction.

■ The government argues that if there was error, it was harmless. We cannot agree. The *Hoffman* case teaches that defense counsel may permissibly lay a foundation for closing argument by asking government witnesses whether certain corroborative tests were conducted (in that case, whether the drug containers were tested for fingerprints) "and whether standard procedure required such testing...." 296 U.S.App. D.C. at 25, 964 F.2d at 25. In this case, however, the trial court did not allow defense counsel to lay such a foundation, and thus counsel was unable to argue to the jury that the lack of physical evidence and the failure of the police to pursue available means of recording the drug transaction might have created a reasonable doubt about her client's guilt.[7]

■ It is, of course, improper to argue or imply that such a lack of proof violated standard police procedures (unless that fact is affirmatively established) or that corroborative evidence, if obtained, would have been favorable to the defendant. *See United States v. Hoffman,* 296 U.S.App. D.C. at 24–25, 964 F.2d at 24–25. We can appreciate the trial court's concern in making sure that defense counsel did not cross the line into

these realms of impropriety. But counsel did not cross that line. Nor was she improperly arguing "missing evidence," as the prosecutor asserted. A missing evidence argument occurs when counsel asks the jury to infer that certain evidence, which exists and would elucidate the transaction, was not presented because it was unfavorable to the opposing party's case. *See Harris v. United States,* 602 A.2d 154, 160 (D.C.1992) (en banc); *Thomas v. United States,* 447 A.2d 52, 57 (D.C.1982). Here, however, counsel was not suggesting that a tape recording, a videotape, or photographs existed and were not produced by the government because their content was unfavorable. Her argument was that because such physical evidence did not exist, the officers' testimony was not corroborated and was therefore insufficiently credible to permit a guilty verdict.

Defense counsel should have been allowed to ask Officer Timlick whether he knew that he could have had another officer videotape the transaction, and whether he had the option of using a recorded channel to transmit a description of the suspect to his sergeant. *See Allen v. United States,* 603 A.2d 1219, 1222–1223 (D.C.) (en banc), *cert. denied,* 505 U.S. 1227, 112 S.Ct. 3050, 120 L.Ed.2d 916 (1992) (witness may properly be cross-examined about steps available to collect or preserve physical evidence to corroborate the witness' version of events). Such questions could have established the fact (if it was a fact) that the officers had a choice to use other, perhaps more reliable, investigative methods. The officers would also have been able to explain why they chose the investigative techniques that they did, and the prosecutor, on redirect, could have corrected any erroneous or misleading impressions left by defense counsel's cross-examination. In addition, the government could have argued to the jury, and probably could have obtained an instruction, that it was under no legal obligation to create corroborative evidence.[8]

---

7. We note that neither drugs nor pre-recorded funds were found in appellant's possession, and that his defense was that the police pinned the crime on him because they could not find the "real" perpetrator. As a result, the case turned essentially on the jury's assessment of the officers' credibility. It is in this context that the lack

of corroborating evidence in the form of photographs or a recording becomes significant.

8. It is apparent from the record that this principle was very much on the mind of the conscientious trial judge when she restricted defense counsel's cross-examination.

*See Williams v. United States,* 237 A.2d 539, 541 (D.C.1968) (government has no "affirmative duty" to test for fingerprints); *United States v. Weisz,* 231 U.S.App. D.C. 1, 23–24, 718 F.2d 413, 436–437 (1983) (FBI agents not required to record allegedly excuplatory conversations with defendant), *cert. denied,* 465 U.S. 1027, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984). We need not and do not decide whether the court's curtailment of cross-examination was an abuse of discretion. Rather, we consider it only as a factor—the principal factor, obviously—in deciding whether the court's instructional error was harmless.

We hold that the trial court erred in telling the jury that it could not base its verdict "on evidence that has not been presented," and, viewing the record as a whole, we conclude that the error was not harmless. Appellant's conviction is therefore reversed, and the case is remanded for a new trial.

*Reversed and remanded.*