**Ricky A. HAYWOOD, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 06–CF–772.

District of Columbia Court of Appeals.

Argued Oct. 15, 2008.

Decided Feb. 19, 2009.

O. Dean Sanderford, Public Defender Service, with whom James Klein, Jaclyn S. Frankfurt and Alice Wang, Public Defender Service, were on the brief, for appellant.

Leslie Ann Gerardo, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, Roy W. McLeese III, and Daniel M. Zachem, Assistant United States Attorneys, were on the brief, for appellee.

Before REID, Associate Judge, KING and FARRELL,* Senior Judges.

KING, Senior Judge:

Appellant Ricky Haywood was found guilty by a jury of second-degree murder while armed. On appeal, he contends that the trial court erred in curtailing his cross-examination of a government witness and in precluding him from making an argument related to the government's failure to call certain witnesses. We are satisfied that there was no error requiring reversal in either of the trial court's rulings. Accordingly, we affirm.

## I.

According to the testimony presented by the government at trial, Sylvia Johnson (hereinafter "Sylvia Johnson" or "Sylvia") had several acquaintances gather at her home on the evening of July 29, 1989. All of the individuals, including Sylvia, were deaf and socially connected through Gallaudet University's Model Secondary School for the Deaf. The first to arrive was the victim, Ronnie Johnson (hereinafter "Ronnie"), who was not related to Sylvia. Larry Nolan arrived soon thereafter, and

---

* Judge Farrell was an Associate Judge, Retired, at the time of argument. His status changed to Senior Judge on January 23, 2009.

found Ronnie and Sylvia arguing in front of her home, with Ronnie waving a knife at her. Sylvia eventually took the knife from him and placed it inside. Later that evening, Marvin Rankin, Aaron Williamson, Marcus Shelton, and the appellant, Ricky Haywood, all arrived.

Haywood had an intense dislike of Ronnie, because nearly three years earlier, Ronnie had a consensual sexual encounter with Renee Eades, Haywood's then girlfriend. Very soon after that encounter, Eades learned that she was pregnant, but she never gave birth to the child.[1] Both Haywood and Eades believed that Ronnie had fathered the child, and as a result, Haywood cultivated the idea that Ronnie had raped Eades.

After all the men arrived, Ronnie, who had been standing on Sylvia's front porch, stepped down to the sidewalk and exchanged angry words with the others. At that point, four of the men, including Haywood, assaulted him. The scuffle was brief; three of the men used their fists, while Aaron Williamson hit Ronnie with a wooden axe handle. Ronnie, who was strong and athletic, emerged with only a knot on his head, some minor cuts and a bloody lip. Ronnie then taunted the men, infuriating Haywood.

Sylvia was nearby watching the scuffle. Haywood drew near her and she passed him an object. Immediately after, Haywood ran toward Ronnie, who fled around the corner into a nearby alley. Marcus Shelton and Aaron Williamson joined the chase, but were outrun. Moments later, Haywood emerged from the alley with bloody hands and a spot of blood on his sneakers. He signed the words, "I stabbed him," washed his hands and left.

Ronnie's body was later found in the alley near Sylvia Johnson's home.

After the Metropolitan Police Department ("MPD") arrived, Marcus Shelton and Sylvia gave written statements to the police. The MPD recovered several items of physical evidence from the area: a medium-sized gold t-shirt, brown trousers, a pair of white sneakers, a blue short-sleeved buttoned shirt, some broken glass fragments from a window, some sections of surface paint from Sylvia's door, a swab of blood from a lawn chair, and four kitchen knives from Sylvia's home.

Ronnie's autopsy showed bruises and abrasions on his head and face, and bruises on his forehead and right arm. All of these occurred within twenty-four hours of his death. A single stab wound to the chest was caused by a single-edged blade of at least three inches in length. The knife wound punctured Ronnie's heart, lung, and pulmonary artery, causing blood loss and massive internal bleeding. Ronnie lost consciousness two to three minutes after being stabbed and he died of blood loss.

Despite the evidence collected and the statements from Marcus Shelton and Sylvia, no arrests were made for Ronnie's death. Over time, the two MPD detectives who had investigated the case retired, as did the crime scene technician, and the medical examiner. Sylvia moved to North Carolina, Marvin Rankin moved to New York City, and Renee Eades moved to Mississippi. Haywood, Aaron Williamson, Marcus Shelton, and Larry Nolan remained in the vicinity of the District of Columbia. The case file remained with the MPD, and its contents were placed in storage.

---

1. Eades testified that she learned of her pregnancy during a visit to the D.C. General Hospital Emergency Room. She also testified that Haywood accompanied her and was upset about the pregnancy. She later suffers a miscarriage.

Almost fifteen years later, Reese Cane, an acquaintance of Sylvia Johnson, contacted the MPD with information about the killing. On February 26, 2004, Cane spoke with Det. Jeff Mayberry of the MPD Major Cold Case Unit. Cane recounted the events of the night of the killing, as told to him by Sylvia. Det. Mayberry located the original homicide case file and began an investigation. He traveled to North Carolina, Pennsylvania, and New York to interview witnesses. He gathered the physical evidence from 1989 and sent some of the items for testing to the FBI's crime laboratory.[2] He also assembled a photographic array for Marvin Rankin, who identified Haywood as the assailant. Det. Mayberry's investigation led to the arrests of Haywood and Sylvia Johnson for Ronnie's murder. On March 30, 2005, they were indicted by a grand jury for first-degree murder while armed in violation of D.C.Code §§ 22–2101 and –4502. Prior to Haywood's trial, Sylvia pled guilty to assault with a deadly weapon and received a suspended sentence of nine to twenty-seven months.

At Haywood's trial, the government called Det. Mayberry to testify about the background of the investigation and the photographic array in which Haywood was identified. To eliminate confusion for the jury, the government obtained permission from the trial court to bifurcate Det. Mayberry's testimony. He first testified about the background of the case and his investigation and was called later to testify about the identification. During his initial appearance, counsel for Haywood cross-examined the detective about the 1989 statements of Marcus Shelton and Sylvia Johnson. Haywood asked, "In their state-ments, they named a number of people who were on the scene that night, correct?" After the government's objection, the following colloquy ensued:

The Court: In the statement of Sylvia Johnson?

Defense Counsel: Yes.

The Court: Objection sustained.

Defense Counsel: May we approach?

The Court: Not at this time.

Defense Counsel: In fact, Detective, it is fair to say that all of the names that were in the information provided to you by Mr. Cane on February 26th of 2004, were included in the statements given by Ms. Johnson and Mr. Shelton on July 29th of 1989?

Prosecutor: Objection, Your Honor.

The Court: Sustained.

Defense Counsel: May we approach, Your Honor?

The Court: Not on that. No, not on that particular issue.

Det. Mayberry further testified on cross-examination that he was unaware of any other 1989 statements from witnesses, that no individuals came forward with information between 1989 and 2004, and that witnesses spoke with him in 2004 only because of his efforts to locate them. In addition to Det. Mayberry, the government called Renee Eades, Marvin Rankin, and Larry Nolan. Rankin and Nolan both described the fight and mentioned that other individuals were present at the scene. Rankin testified that Ronnie and Sylvia were at the scene, along with Williamson, Haywood, Nolan and one other

---

**2.** n 2005, a cutting from the blue shirt, a blood sample from Ronnie's autopsy, and a dried blood sample from Haywood were all sent to the FBI crime laboratory. Male DNA was found on the blue shirt, but Haywood was excluded as a potential contributor. Also, Ronnie's blood sample had degraded over time and was not useful in the investigation.

individual, whose name he did not know. Nolan also testified that Rankin, Williamson, Haywood, Shelton, Sylvia, and Ronnie were all at the scene. The government recalled Det. Mayberry to testify about the photographic array in which Marvin Rankin identified Haywood. Haywood called Aaron Williamson to testify on his behalf.

Prior to closing argument, the government filed a motion *in limine* to preclude Haywood from making a missing witness argument to the jury regarding the absence of testimony from Marcus Shelton or Sylvia Johnson. Counsel for Haywood responded that rather than asking the jury to make an inference based on the absence of the witness, that he would be asking the jury to draw an inference based on the absence of "testimonial evidence." Haywood's counsel asked the trial court for permission to argue to the jury that there were other people at the scene who did not testify. The trial court responded, "You can argue that there were people on the scene. But the argument cannot be made that because they did not testify, their testimonial evidence would have indicated something otherwise." The jury then found Haywood guilty of second-degree murder in violation of D.C.Code §§ 22–2103 and –4502. He was sentenced to a term of twelve to thirty-six years.

## II.

### A.

Haywood first contends that the trial court erred in limiting his cross-examination of Det. Mayberry. This error, argues Haywood, infringed his Sixth Amendment right to present a defense and confront witnesses and should be reviewed by this court under the "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We express no view whether the trial court's limiting of Haywood's cross-examination was error, but will assume, for the sake of argument that it was. Nonetheless, we are satisfied that the assumed error did not amount to a violation requiring application of the *Chapman* standard. Haywood also argues, wrongly in our view, that the limitation of his cross-examination amounted to government suppression of exculpatory evidence under such cases as *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Finally, Haywood contends that the inadequacy of the police investigation was central to his defense and that the trial court hindered his ability to make that point when it curtailed his cross-examination of Det. Mayberry. We are satisfied, however, that the claim of the centrality of the inadequacy of the police investigation is not supported by the record, as we discuss below.

■ First, we conclude that the trial court's limitation of Haywood's cross-examination of Det. Mayberry does not violate the Sixth Amendment's Confrontation Clause. We have said that, "Not every evidentiary decision of the trial court ... necessarily implicates the defendant's constitutional right to cross-examine witnesses and present a defense. The Confrontation Clause ... guarantees a defendant only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant may wish." *Clark v. United States*, 639 A.2d 76, 82 (D.C.1993) (internal quotations and citations omitted).

Det. Mayberry was initially called to offer testimony about the investigation and was questioned about how the informant came to him, how he located the original 1989 case file, and how he tracked down

witnesses. When counsel for Haywood cross-examined Det. Mayberry, he sought to elicit the names of other individuals at the scene of the crime that were named in Sylvia's 1989 statement to the police.[3] After the trial court sustained the government's objection, Haywood sought to compare the names provided by Reese Cane with the names of witnesses in Sylvia's statement.[4] The trial court again sustained the government's objection. Finally, Haywood was able to elicit, without objection, testimony from Det. Mayberry that Sylvia and Marcus Shelton gave written statements to the police in 1989, but other, unnamed individuals at the scene did not communicate with the police until Det. Mayberry questioned them in 2004.

■ In the course of his cross-examination of Det. Mayberry, Haywood's counsel was able to successfully convey to the jury that some of the people who were present at the scene in 1989, and who were named in Marcus Shelton's and Sylvia's statements, never spoke to the police. On this record, we conclude that Haywood's Sixth Amendment rights were not violated and therefore, we decline to apply the *Chapman* standard to the trial court's decision. While there is no doubt that a criminal defendant's right to confront witnesses is an important one, we have held the Confrontation Clause is subject to reasonable limits. *See McCloud v. United States,* 781 A.2d 744, 752 (D.C.2001) (right to confront adverse witnesses is subject to reasonable limits by the trial court, but must include evidence regarding the trustworthiness or bias of a witness), and *Scull v. United*

*States,* 564 A.2d 1161, 1164 (D.C.1989) (trial court may impose limits to cross-examination to prevent harassment, prejudice, confusion of the issues, or repetitive, cumulative or only marginally relevant questioning). Moreover, where the issue on cross-examination "is merely collateral, or where ample cross-examination has already been allowed or evidence admitted on a particular issue," we review the trial court's decision under the less stringent "harmless error" test set forth in *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Clark v. United States,* 639 A.2d 76, 82 (D.C.1993). Here, the issue on cross-examination was collateral, for the reasons stated below and as we said above, ample cross-examination was permitted. For those reasons we cannot say that the curtailment implicated the Sixth Amendment. Finally, applying the *Kotteakos* standard, we are satisfied that, for the same reasons, any error was harmless.

Haywood next compares the trial court's curtailment of his cross-examination of Det. Mayberry with government suppression of requested exculpatory evidence pursuant to *Brady v. Maryland* and *Kyles v. Whitley* That claim is without support here, because it is undisputed that the government complied with all of Haywood's *Brady* requests relating to the disclosure of Sylvia and Marcus Shelton's 1989 statements. Indeed Sylvia's 1989 statement was marked as defense exhibit # 7 and was shown to Det. Mayberry during his cross-examination.[5] In *Kyles,* the

---

3. Haywood already knew through discovery that the names Reese Cane provided to Det. Mayberry in 2004, were the same names Sylvia mentioned in her 1989 statement to the police. See *infra* notes 4 and 5.

4. During discovery, Haywood requested and received Cane's 2004 statement to Det. Mayberry.

5. Counsel for Haywood showed Sylvia's 1989 statement to Det. Mayberry during his cross-examination in order to refresh his recollection as to whether there was an interpreter present to assist the police and Sylvia in obtaining her statement. The statement was never offered into evidence.

government's response to the defendant's *Brady* request was that there was "no exculpatory evidence of any nature," *Kyles*, 514 U.S. at 428, 115 S.Ct. 1555, but failed to turn over witness statements, phone recordings, tape recordings of conversations and other items favorable to the accused. In our view, these cases have no application to what occurred here—*i.e.*, the disallowance of cross-examination on a point peripheral to the issues presented.

Haywood however, argues that his central defense strategy was to convince the jury that the investigation was poorly managed and the curtailment of his cross-examination of Det. Mayberry undermined this strategy. The record does not support Haywood's contention. In opening argument, counsel focused on the lack of credibility of the government's witnesses and made no explicit or implied mention of the inadequacy of the police investigation in 1989 or in 2004. In closing argument, Haywood asserted that the informant, Reese Cane, was motivated primarily by the police reward and argued that Marvin Rankin and Aaron Williamson were Ronnie's real killers. Haywood never argued that the investigation itself was inadequate or that the fifteen-year gap should be considered in evaluating reasonable doubt.

Moreover, in the interval between Det. Mayberry's first and second appearance as a witness, some eight days, Haywood made no attempt to explain to the court that the disallowed cross-examination related in any way to what he now characterizes as his "central defense strategy." Since the trial court was never apprised of the nature of Haywood's argument, or the so-called centrality of this point, as expressed before us, we consider any error under the plain-error standard, *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In applying that standard, we reverse the trial court only if its

error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736, 113 S.Ct. 1770 (internal quotation and citation omitted). We need not decide whether the answers sought by Haywood during the disallowed cross-examination were hearsay, or that it was not relevant, as the government argues, because we are satisfied that even if there was error by the trial court, it did not constitute a plain-error that was "prejudicial, affecting the outcome of the ... proceedings." *Id.*

**B.**

Haywood next contends in his brief to this court that he "was entitled to point out the government's failure to call Ms. Johnson and Mr. Shelton to the stand in arguing that the government had failed to prove his guilt beyond a reasonable doubt." The trial court ruled that while Haywood's counsel could mention there were other people on the scene, he could not argue that "because they did not testify, their testimonial evidence would have indicated something otherwise." Haywood contends that the trial court committed constitutional error in so ruling. We disagree, mainly because Haywood neither requested the opportunity to make the specific argument during closing he now claims he should have been permitted to make and he never argued the legal basis in support of that argument. Therefore, the trial court cannot be said to have erred in denying him the opportunity to make an argument that he now claims, for the first time, that he was entitled to make.

■ In ruling on the government's motion *in limine*, the trial court discussed missing witness and partial missing witness issues with counsel. The government argued that the witnesses not called by the government should not be considered "peculiarly available" to the government and

counsel for Haywood agreed. Counsel stated, however, that he did not plan to make a missing witness argument, but rather he wanted to make a missing evidence argument, as allowed by our holding in *Greer v. United States,* 697 A.2d 1207 (D.C.1997). Haywood argued that he should be allowed to argue to the jury that the lack of testimonial evidence should be considered by the jury in its evaluation of whether the government had met its burden of proof. The trial court told Haywood, "That is considered a missing witness argument and I am instructing you to not make that argument or I'll interrupt you in your closing argument and instruct the jury otherwise."

Haywood then informed the trial court that an example of what he might argue at closing would be, "[A]s you heard, ladies and gentlemen, there were six key players that night. Mr. Haywood, Ms. Johnson, Marvin Rankin, Larry Nolan, Aaron Williamson and Marcus Shelton. They were all there and saw, heard what happened and you heard the government's case[,] you heard from two of them." The government responded that the proposed argument violated our holding in *Price v. United States,* 531 A.2d 984 (D.C.1987), because Haywood would clearly be asking the jury to infer that testimony from individuals not appearing as witnesses would be adverse to the government's case. The trial court concluded that in making the proffered argument, counsel would be asking the jury to infer that the missing witnesses' testimony would have contradicted the testimony from the government's witnesses. Haywood then asked the trial court for permission to argue to the jury that there were other people at the scene who did not testify. The trial court responded, "You can argue that there were people on the scene. But the argument cannot be made that because they did not

testify, their testimonial evidence would have indicated something otherwise."

We have held that before a party can make a missing witness argument, it must seek the court's permission and demonstrate "(1) that the witness in question is peculiarly available to the party against whom the inference is sought, and (2) that the witness' testimony would have elucidated the transaction at issue." *Id.* at 993 (internal quotation and citation omitted). It is undisputed that the witnesses here were equally available to both parties and therefore a missing witness argument— asking the jury to infer that the missing witness could have testified otherwise— was not permissible. We also held in *Price* that by simply "pointing out a witness' absence, counsel is plainly suggesting that if that witness were produced the resulting testimony would be adverse to the other party." *Id.* In that regard, we have described a partial missing witness argument as "one in which counsel merely notes the absence of a witness but refrains from asking the jury to infer that the witness' testimony would have been adverse to the other party." *Id.* (internal quotation and citation omitted). Accordingly, such an argument is also not permitted. Thus, because neither Sylvia nor Marcus Shelton were peculiarly available to the government, Haywood was unable to lay a proper foundation for either a partial or full missing witness argument and was, therefore, not entitled to make either a missing or partial missing witness argument unless there was some other legal basis for such an argument.

Haywood argues, however, that missing testimonial evidence can be brought to the jury's attention to allow the jury to infer that such testimony would have been harmful to the government's case. In making that argument, he relies on our decision in *Greer,* and further agues that

it, rather than *Price,* is controlling in these circumstances. The basis for that argument is the claim that the limits imposed by *Price* regarding commentary on the failure to call a witness are binding only on the prosecution, but not the defense because of our later ruling in *Greer.* In *Greer,* a criminal defendant's conviction was reversed after this court held that a trial court improperly instructed the jury that it could not base its decision on evidence that was not presented. While *Price* deals directly with a missing witness argument, *Greer* turned on whether the jury could consider the absence of physical evidence that the government could reasonably expect to have presented, under the circumstances of the case.

There is nothing in *Price,* however, or in any of the cases following it, indicating that its limitation on a missing or partial missing witness argument, apply only to government counsel in a criminal case. Nor is there anything in *Greer,* or any of the cases following it, that its ruling was intended to carve out an exception to the ruling in *Price* with respect to the defense presentation. We need not reach the issue of whether *Greer,* as an exception to the rule in *Price,* allows Haywood to make a "missing testimonial evidence" argument, because that issue was not presented to the trial court. To be sure, counsel cited *Greer* in opposing the motion *in limine,* but counsel never argued that the ruling in *Greer* modified the *Price* holding that partial missing witness arguments are permitted by the defense but not the prosecution. For that reason alone, Haywood's claim must fail. Moreover, while Haywood now claims in his brief that he was denied the opportunity to point out the "government's failure to call Ms. Johnson and Mr. Shelton to the stand in arguing that the government had failed to prove his guilt beyond a reasonable doubt," he never specifically requested that the court allow such an argument on that ground, and the court never ruled that he could not. Therefore, because he failed to present to the trial court the argument he makes here, he is not entitled to relief in this court. *See Williams v. Gerstenfeld,* 514 A.2d 1172, 1177 (D.C. 1986) (matters not properly presented to a trial court will not be resolved on appeal) (citing *Chase v. Gilbert,* 499 A.2d 1203, 1209 (D.C.1985); *Brown v. Collins,* 131 U.S.App. D.C. 68, 402 F.2d 209 (1968); *Miller v. Avirom,* 127 U.S.App. D.C. 367, 369–71, 384 F.2d 319, 320–23 (1967)).

In any event, Haywood was permitted to argue to the jury essentially what he claims here he was denied. In his closing argument Haywood stated:

> After 17 years, what does the Government bring to you that makes its case, proves that Mr. Haywood is guilty beyond a reasonable doubt and asks you to convict him of first degree murder. What does the Government bring to you? They bring to you the testimony of Renee Hines, Larry Nolan, Marvin Rankin and Aaron Williamson. That's it. No physical evidence. No medical evidence. Just the words of those people.

There was neither objection from the government nor interruption from the trial court. In making that argument, Haywood reminded the jury that they did not hear from all of the people at the scene, a fact which was quite clear to the jury, as it was undoubtedly aware of the existence of Marcus Shelton and Sylvia from the testimony, just as it was undoubtedly aware that neither of them testified. We conclude, therefore, that Haywood was able to convey to the jury his contention that the government's case was weak without explicitly being allowed to make a partial missing witness argument.

Finally, as we did in *Greer*, we will evaluate the trial court's ruling under the harmless error standard. 697 A.2d at 1211. Assuming *arguendo* that the trial court did err, we are satisfied that the error was harmless. The trial court precluded Haywood from making a partial missing witness argument, but allowed him to make an argument that was very similar to the argument disallowed by the trial judge. Comparing the argument that Haywood claims that he wished to make with his actual closing argument, we cannot conclude that the judgment of guilt was substantially affected by the trial court's ruling.

Accordingly, for the foregoing reasons, the judgment is

*Affirmed.*