63 A.3d 599

**Jorge APPRAICIO**

v.

**STATE of Maryland.**

**No. 49, Sept. Term, 2012.**

Court of Appeals of Maryland.

March 26, 2013.

Piedad Gomez, Assistant Public Defender, (Paul B. De-Wolfe, Public Defender, Baltimore, MD), on brief, for Petitioner.

Carrie J. Williams, Asst. Atty. Gen., (Douglas F. Gansler, Attorney General of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

BARBERA, J.

Trial judges walk a fine line when answering questions posed by jurors during the course of their deliberations. Any answer given must accurately state the law and be responsive to jurors' questions without invading the province of the jury to decide the case. We are asked here whether the trial court acted within its discretion in responding to a jury question concerning evidence that was not presented at trial.

A jury sitting in the Circuit Court for Montgomery County convicted Petitioner Jorge Aparicio [1] of second-degree assault on October 5, 2010, in connection with an attack on his girlfriend, Clara Moran.[2] He was sentenced to five years of imprisonment, with all but 18 months of the sentence suspended, followed by three years of supervised probation. Petitioner appealed his conviction to the Court of Special Appeals, which affirmed the Circuit Court in an unpublished opinion. We granted a petition for a writ of certiorari, *Appraicio v. State*, 427 Md. 605, 50 A.3d 605 (2012), to answer the following question:

Where the deliberating jury asked, "[c]an we consider the fact that there was no police report in evidence or no police testimony or to what extent can we consider the lack of above," did the trial court err in responding that they were to decide the case based on "what is in evidence," which the court defined as, "the testimony from the witness stand, [the] physical items of evidence, and any exhibits that have been given to you," thereby excluding from the universe of what the jury could consider in reaching a verdict the lack of testimony and/or evidence presented?

For the reasons that follow, we hold that the trial court did not abuse its discretion in answering the jury's question in the manner it did. We therefore affirm the decision of the Court of Special Appeals upholding Petitioner's conviction.

I.

In the early morning hours of July 12, 2010, Petitioner returned home to an apartment in Gaithersburg, Maryland, that he shared with his girlfriend Moran and his friend Oscar Romero. Petitioner roused Moran, who had been sleeping in

---

1. Petitioner notes in his brief that his last name has been misspelled throughout these proceedings and that this is the correct spelling of his name. To avoid confusion, we shall continue to spell his name in the caption of this case the same way it was spelled in the charging documents and before the Circuit Court and Court of Special Appeals.

2. Her full name is Clara Lorena Moran Davila, but she has identified herself as Ms. Moran and was referred to by the parties in this manner.

the bedroom. Moran testified at trial [3] through an interpreter that she was afraid of Petitioner because he frequently would come home drunk and hit her. Moran testified that she joined Petitioner in the living room, where he called her a "damn bitch" and threw a glass at her, which she dodged. After he missed hitting her, Moran testified that Petitioner started striking her with his fists. At one point, he grabbed her by her hair and she fell down, after which he repeatedly kicked her until she was able to escape outside.

Moran testified that she hid outside for approximately 15 minutes before returning to the apartment, where she saw Petitioner throwing some of her possessions out of a window and onto the street. At 1:54 a.m., she called 911, and a recording of that call was played for the jury at trial. In the call, Moran stated that Petitioner was "very violent," had hit her in the head, and was throwing her possessions into the street.

The police arrived shortly afterwards and found Petitioner sitting outside of the apartment. The officers told Petitioner to leave the property and indicated to Moran that she should go back to sleep. Moran went back inside the apartment. Approximately a half hour later, she heard knocking on the front door. Assuming it was the police, she opened the door and Petitioner came back inside the apartment. Moran testified that Petitioner struck her again on the left side of her neck and her left shoulder. Moran ran out of the apartment through the front door and hid behind several cars in the parking lot until a passerby called 911 to report the incident at 3:25 a.m. Moran told the 911 operator what had happened and the police returned to the apartment. Moran did not go to the hospital and the police did not take photographs or write a report, although the officers told Moran that she could file a report if she wished to do so. Petitioner was taken into custody by the police and returned to the apartment around 7 a.m.

---

3. Moran was the only witness to testify at trial. The facts as presented here are based on Moran's testimony about what she says happened.

Although Petitioner told Moran to leave immediately, she stayed in the house for three more days because she said she had nowhere else to go. Two days after the incident, Moran made a videotape of her injuries, which was shown to the jurors during the trial. Petitioner and Moran broke off their relationship on July 27, 2010, about two weeks after the incident. At the urging of her friends, Moran filed a complaint against Petitioner in the District Court of Maryland on August 4, 2010. She claimed she did not report her injuries to the police sooner because she was scared.

The case came on for a trial before the Circuit Court for Montgomery County on October 4, 2010. The State called Moran as its only witness and introduced the tape of her two 911 calls as well as the videotape of her injuries. The defense called no witnesses and presented no evidence. In instructing the jury, the trial court hewed closely to Maryland Criminal Pattern Jury Instruction 3:00, which describes what constitutes evidence.[4]

During closing argument, defense counsel asserted that Moran fabricated the story of the attacks in order to get

---

**4.** Maryland Criminal Pattern Jury Instruction 3:00 reads as follows:

In making your decision, you must consider the evidence in this case; that is
(1) testimony from the witness stand; [and]
(2) physical evidence or exhibits admitted into evidence; [and]
(3) [stipulations; and]
(4) [depositions; and]
(5) [facts that I have judicially noticed.]

In evaluating the evidence, you should consider it in light of your own experiences. You may draw any reasonable conclusion from the evidence that you believe to be justified by common sense and your own experiences.

The following things are not evidence and you should not give them any weight or consideration:
(1) any testimony that I struck or told you to disregard and any exhibits that I struck or did not admit into evidence; [and]
(2) questions that the witnesses were not permitted to answer and objections of the lawyers; [and]
[(3) the charging document. The charging document is the formal method of accusing the defendant of a crime. It is not evidence of guilt and must not create any inference of guilt.]

revenge against Petitioner, who had broken up with her and evicted her from his apartment. Along this line of argument, defense counsel suggested that the lack of police testimony or a police report in the case demonstrated that Moran's account of events was false, arguing as follows:

> Now as citizens of Montgomery County, you all know that Montgomery County Police are very well trained, very diligent, and they take real incidents very seriously. Real incidents of domestic violence, they take seriously. They file reports, they take photos, they collect evidence, they collect statements of witnesses. You have none of that in this case. There is no report, there are no police photos. Most importantly, there is no police officer. The police did show up that night, if the police did show up, there would be an officer to testify either that Ms. Moran was telling the truth, or testify that what she was saying wasn't. But what's for sure is that if police showed up, they didn't observe any injuries on her because if so, there would be some kind of record.

After retiring to deliberate, the jury presented the judge with the following note:

> Question 1: Can we consider the fact that there was no police report in evidence or no police testimony or to what extent can we consider the lack of above.[5]

---

> When I did not permit the witness to answer a question, you must not speculate as to the possible answer. If after an answer was given, I ordered that the answer be stricken, you must disregard both the question and the answer.
>
> During the trial, I may have commented on the evidence or asked a question of a witness. You should not draw any conclusion about my views of the case or of any witness from my comments or my questions.
>
> Opening statements and closing arguments of lawyers are not evidence. They are intended only to help you to understand the evidence and to apply the law. Therefore, if your memory of the evidence differs from anything the lawyers or I may say, you must rely on your own memory of the evidence.

5. In the same note, the jury also asked to hear the 911 calls again "in order to clear some of our doubts."

The discussion that followed among counsel and the trial court takes up more than 25 pages of transcript in the record. The State acknowledged that the jury could be aware that there was no police report or police testimony in evidence. The State pointed out, though, that the jurors should not infer "anything against the State from that fact" and expressed concerns about the jury speculating on the absence of certain evidence. In response, defense counsel stated, "I think that the jury can consider the lack of evidence, just as they can consider the evidence."

The Circuit Court had concerns about discussing an item of potential evidence with the jury, namely the police report, that likely would have been inadmissible had the prosecution sought to admit it at trial:

> But don't I need to be careful not to mislead the jury, because if what they're asking about in whole or in part would otherwise not be admissible, isn't that something that needs to be given some thought?  ... So how do I fairly answer the question without misleading the jury?

Petitioner's counsel noted that "this question is prompted by many of the statements that were made by Defense, in Defense closing which is, no police officer testified to corroborate that there was broken glass, or there was, all the things that were testified to." Defense counsel suggested that the jury be instructed that it may consider the evidence or the lack of evidence in reaching its verdict. The court observed that there is a difference between what counsel may argue and the instructions that a judge presents to the jury, and the court expressed concerns about making sure the response to the jury's question was "legally correct and fair to all sides." The court noted: "[W]hen it comes out of the mouth of a judge, it's so powerful that it has the, at least, potential to tilt the balance one way or the other." The court stated its fear that, if the response to the jury was too detailed, it could end up as a lecture on what is and is not admissible in evidence and under what circumstances.

Ultimately, the Circuit Court gave the following response in reply to the jury's question:

With respect to the first two topics of the note about what you can consider or not consider and what, if anything, you should do about it.

Let me tell you this, members of the jury, you have to decide this case based on what is in evidence in this case. In making your decision, you consider the testimony from the witness stand, you consider physical items of evidence, and any exhibits that have been given to you.

In considering the evidence which is solely the province of the jury, consider it in light of your own commonsense and your experiences. You may draw any reasonable inferences or conclusion from the evidence that you have that you believe to be justified by your own experiences.

That's the best I can do. If you have any additional questions, I would be happy to try to answer them. Please return to the jury room and when you are all together, then and only then may you resume your deliberations.

The jury returned a verdict of guilty on the first count of second-degree assault, related to the first attack on Moran, but acquitted Petitioner of the second count of second-degree assault in connection with the second alleged attack. The court sentenced Petitioner to five years of imprisonment with all but 18 months suspended, followed by three years of supervised probation.

Petitioner appealed the conviction to the Court of Special Appeals, challenging the Circuit Court's response to the jury's question.[6] In an unreported opinion, the Court of Special Appeals upheld the conviction, holding that the trial judge properly exercised his discretion in giving the instruction he did in response to what was "a fact question about the evidence." The Court observed that the jury was properly instructed on the presumption of innocence and the burden of

---

6. Petitioner also claimed the trial court erred by allowing Moran to testify that Petitioner had hit her on other occasions. That issue was not raised in the petition for certiorari before this Court.

proof and that the trial court's response was an accurate statement of the law that responded to the jury's query. The present appeal followed.

## II.

We review a trial court's decision to give a particular jury instruction under an abuse of discretion standard. *Stabb v. State*, 423 Md. 454, 465, 31 A.3d 922 (2011) (citing *Gunning v. State*, 347 Md. 332, 351, 701 A.2d 374 (1997)). "Where the decision or order of the trial court is a matter of discretion it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Atkins v. State*, 421 Md. 434, 447, 26 A.3d 979 (2011) (quoting *Gunning*, 347 Md. at 351–52, 701 A.2d 374).

"The main purpose of a jury instruction is to aid the jury in clearly understanding the case, to provide guidance for the jury's deliberations, and to help the jury arrive at a correct verdict." *Chambers v. State*, 337 Md. 44, 48, 650 A.2d 727 (1994). Maryland Rule 4–325(a) states that "[t]he court shall give instructions to the jury at the conclusion of all the evidence and before closing arguments and may supplement them at a later time when appropriate." Upon a party's request, the court shall "instruct the jury as to the applicable law and the extent to which the instructions are binding." Md. Rule 4–325(c). Supplemental instructions can include an instruction given in response to a jury question. When the jury asks such a question, "courts must respond with a clarifying instruction when presented with a question involving an issue central to the case." *Cruz v. State*, 407 Md. 202, 211, 963 A.2d 1184 (2009). Trial courts must avoid giving answers that are "ambiguous, misleading, or confusing." *Battle v. State*, 287 Md. 675, 685, 414 A.2d 1266 (1980) (quoting *Midgett v. State*, 216 Md. 26, 41, 139 A.2d 209 (1958)).

Petitioner argues that the trial court abused its discretion by failing to give a more responsive answer to the jury's question. Petitioner cites *State v. Baby*, 404 Md. 220, 263, 946

A.2d 463 (2008), for the proposition that trial courts are required to respond directly to jury questions related to major issues in a case, and that failing to provide "an accurate and responsive answer is error." Quoting *Atkins*, 421 Md. at 452, 26 A.3d 979, Petitioner argues that, "because a reasonable doubt could arise from a lack of evidence, 'a defendant has the right to raise a defense based on the lack of evidence presented by the State.'" Petitioner notes that the United States Supreme Court and other jurisdictions have approved of reasonable doubt instructions that state that jurors may consider the lack of evidence, as well as the evidence presented.[7] Petitioner argues that the trial court's instruction not only failed to mention the jury's ability to consider the lack of evidence, but the instruction affirmatively negated the jury's ability to do so by instructing jurors that they had to decide the case based on "what is in evidence."

Petitioner argues that the trial court's instruction undermined the defense theory presented in closing argument that Moran concocted the story to get revenge against Petitioner. Petitioner asserts that the jury did not ask a fact question about the evidence, but a question of law that should have been addressed by explaining that a reasonable doubt can arise from the evidence or the lack thereof. In conclusion, Petitioner contends that the error was not harmless beyond a reasonable doubt because the State provided only one witness, Moran; her credibility was a major part of the State's case; and the jury struggled with the outcome, as evidenced by the multiple questions it asked the judge and a statement the foreperson made expressing how difficult it was for the jury to

---

7. In support, Petitioner cites cases in which reasonable doubt instructions were given that included the "lack of evidence" as an appropriate jury consideration. *See, e.g., Victor v. Nebraska*, 511 U.S. 1, 18, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (discussing an instruction that stated reasonable doubt could arise "from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the State. . . ."). This argument is ultimately unpersuasive. The fact that courts, including the Supreme Court, have approved instructions containing this "lack of evidence" language does not mean that instructions without the language are therefore improper.

reach an agreement on the charges. The State counters that the trial court acted within its discretion in crafting the jury response it did.

■ We agree with the State. The trial court here was right to be cautious concerning its response to the jury's question because too much commentary on the evidence can cross the line into being inappropriate. "[A] Judge, because of his high and authoritative position, should be exceedingly careful in any remarks made . . . and should carefully refrain, either directly or indirectly, from giving expression to an opinion upon the existence or not of any fact, which should be left to the finding of the jury." *Dempsey v. State*, 277 Md. 134, 149, 355 A.2d 455 (1976) (quoting *Elmer v. State*, 239 Md. 1, 10–11, 209 A.2d 776 (1965)).

■ Certainly, trial courts have a duty to answer, as directly as possible, the questions posed by jurors. Our decision in *Baby* makes the point. In *Baby*, the jury twice asked during a rape trial whether a woman could withdraw consent after intercourse had begun. 404 Md. at 263, 946 A.2d 463. We held that it was error for the trial court to refer the jury back to the legal definition of rape because that definition "was not sufficient to address either of the jury's questions." *Id.* at 263–64, 946 A.2d 463. It is important to understand, though, that the jury's question in *Baby* sought an answer to a purely legal concern. When the jury's question seeks guidance on how to find the facts, however, the judge's response must be more circumscribed, so as not to invade the province of the jury. We have said that: "[i]nstructions as to facts and inferences of fact are normally not required." *Patterson v. State*, 356 Md. 677, 684, 741 A.2d 1119 (1999). This is because an instruction regarding particular evidence "may have the effect of overemphasizing just one of the many proper inferences that a jury may draw." *Id.* (quoting *Davis v. State*, 333 Md. 27, 52, 633 A.2d 867 (1993)).

■ The question asked of the trial court was, "Can we consider the fact that there was no police report in evidence or no police testimony or to what extent can we consider the lack

of above." Petitioner views this inquiry as presenting a simple question of law: Can the jury consider the lack of evidence in reaching its verdict? But the jury's question was not so broad. Jurors asked about specific evidence, namely what they should make of the fact that no police report was entered into evidence and no police officer testified. The trial court reasoned that, even if the prosecution had sought to introduce a police report (which apparently did not exist for the incidents at issue), the report would have been inadmissible hearsay. Explaining this to the jury likely would have been confusing, particularly if jurors were told they should not consider the lack of a police report because it probably would have been inadmissible, yet they could consider the lack of officer testimony.

Petitioner points to *Eley v. State*, 288 Md. 548, 419 A.2d 384 (1980), in support of the idea that a lack of evidence may be considered by the jury in reaching its verdict. In *Eley*, the trial court refused to permit defense counsel to argue the lack of fingerprint evidence in the case. *Id.* at 550–51, 419 A.2d 384. We observed that counsel are generally not permitted to comment on facts not in evidence. *Id.* at 551, 419 A.2d 384. "The broad purpose of the rule is to prevent counsel for either the prosecution or defense from attempting to introduce to the jury matters which ought not to be considered in arriving at a determination of guilt or innocence." *Id.* at 552, 419 A.2d 384. But we drew a distinction between improperly commenting on facts not in evidence and defense argument that goes to the "strength of the prosecution's evidence, or more specifically, to the *lack of evidence.*" *Id.* at 553, 419 A.2d 384. The latter is entirely appropriate, particularly "where there is *unexplained* silence concerning a routine and reliable method of identification" and the defense is commenting on "this gap in the proof offered." *Id.* at 555, 419 A.2d 384. We held that not allowing counsel to comment on this gap in proof was an abuse of discretion. *Id.* at 556, 419 A.2d 384.

There is a difference, though, between arguments made by counsel and a trial judge's statement commenting on the evidence, or lack thereof. We are mindful that a statement

from the bench can take on greater importance than one made by counsel, particularly when it concerns the law to be applied in a case. *See Hardison v. State,* 226 Md. 53, 62, 172 A.2d 407 (1961) (observing that "a statement or instruction by the trial judge carries with it the imprimatur of a judge learned in the law, and therefore usually has more force and effect than if merely presented by counsel"). Under *Eley,* defense counsel was certainly free to argue here that no police officer testified in the case and to question whether the prosecution met its burden to prove the crime beyond a reasonable doubt. But statements from counsel and instructions from the bench are quite different, and what might be appropriate argument coming from counsel could constitute an abuse of discretion coming from the trial judge.

The discretion we afford judges is not without limits in this area. *See Brogden v. State,* 384 Md. 631, 634, 866 A.2d 129 (2005) (holding it was reversible error for a trial court to issue a supplemental instruction concerning a defense not raised by the defendant that was not applicable to the count as present-ed and that inappropriately shifted the burden of proof). Indeed, we have cautioned trial courts from commenting too much on the evidence in a case. In a pair of 2011 decisions, *Atkins v. State* and *Stabb v. State,* both *supra,* we addressed so-called "no duty" or "anti-CSI effect" jury instructions which inform a jury that the prosecution has no legal requirement to use any specific investigative methods or scientific tests to prove its case. In *Atkins,* we did not rule out such an instruction, but held it was improper under the facts of that case. 421 Md. at 454, 26 A.3d 979. We noted that the "better practice" for trial courts was to "refrain from commenting on inferences to be drawn by the jury," and we cautioned against instructions that discuss "what the State does *not* have to do." *Id.* at 454 n. 8, 26 A.3d 979. We reviewed an identical instruction in *Stabb,* 423 Md. at 470, 31 A.3d 922, and conclud-ed that it was improper for the trial judge to give preemptive-ly a "no duty" instruction in the absence of "robust and vehement" closing argument concerning a lack of scientific evidence. *Id.* at 471, 31 A.3d 922. We held that the instruc-

tion in *Stabb* had the effect of telling jurors not to consider the absence of certain scientific evidence, relieving the State of its burden to prove guilt beyond a reasonable doubt and invading the province of the jury. *Id.* at 472, 31 A.3d 922.

In this case, the Circuit Court's response closely tracked the Maryland Pattern Jury Instruction 3:00 given earlier. The court instructed the jury that it had to "decide this case based on what is in evidence in this case," which the court defined as "the testimony from the witness stand," "physical items of evidence," and "any exhibits that have been given to you." The court added: "In considering the evidence which is solely the province of the jury, consider it in light of your own commonsense and your experiences. You may draw any reasonable inferences or conclusion from the evidence that you have that you believe to be justified by your own experiences."

Petitioner argues that the instruction given likewise relieved the State of having to prove its burden beyond a reasonable doubt because it implied that jurors were not to consider the lack of certain evidence in the case.[8] We disagree. The trial court did not instruct the jurors affirmatively to disregard evidence that was not in the case, as could be implied through the "no duty" instructions in *Atkins* and *Stabb*. Rather, the trial court told jurors that evidence was what had been presented at trial and that they were free to draw inferences based on their commonsense and reasoning. This answer did not contradict the trial judge's earlier instruction on the

---

**8.** Petitioner cites *Greer v. United States*, 697 A.2d 1207 (D.C.1997), in support of the idea that trial judges should tell jurors they can consider the lack of evidence in a case. In *Greer*, the defense noted in closing argument that jurors did not see videotape or photographs of the drug transaction at issue in the case. 697 A.2d at 1209. The trial judge interrupted the defense closing to hold a bench conference, after which the judge told jurors the following: "The jury should base its decision based on the evidence which has been presented, and not on evidence that has not been presented." *Id.* at 1210. Those facts are markedly different from the case *sub judice*. Here, the trial judge gave a supplemental instruction in response to a jury question, not in the middle of the defense's closing argument. Additionally, the trial judge here did not affirmatively tell jurors to disregard evidence that was not presented, as did the judge in *Greer*.

State's burden of proof, which was delivered prior to closing arguments. If what the State presented convinced the jurors beyond a reasonable doubt, they could convict; if not, they were free to acquit, which they did on one of the charges. It is true that the trial court did not refer explicitly to the ability of the jury to consider the lack of evidence, but the answer given allowed the jury to draw what inferences it might from the evidence, without the court impermissibly suggesting what inferences to draw.

Our holding here does not mean that this was the only response the trial court could have given in this situation or that this response is the ideal one in every situation.[9] We simply hold that it was not an abuse of discretion for the court to give the instruction it did in this case.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

Dissenting Opinion by ADKINS, J. which BELL, C.J., joins.

---

**9.** The dissent contends that the trial court abused its discretion in answering the jury's question in the manner it did because the court's reply undermined the earlier instruction given on the State's burden of proof. The dissent maintains that the court's answer implied that the State did not have to prove all of the elements of the crime beyond a reasonable doubt. We disagree that the trial court's answer lessened the State's burden to prove its case. Petitioner suggested at oral argument, and the State agreed, that re-reading the reasonable doubt instruction would have been appropriate under the circumstances. We agree, as well, but we disagree with the dissent that reminding the jury of the State's burden of proof beyond a reasonable doubt was required under these circumstances, particularly given that Petitioner did not specifically ask the trial court to restate the instruction on reasonable doubt.

Another of Petitioner's arguments is that jurors should have been instructed that a lack of evidence can contribute to a reasonable doubt. The State observes that the current pattern instruction on reasonable doubt has been deemed constitutionally sufficient by this Court, *Carroll v. State*, 428 Md. 679, 692–93, 53 A.3d 1159 (2012), but notes that the Maryland State Bar Association Committee on Maryland Pattern Instructions could certainly consider amending the pattern instruction. We take no position at this time on whether a statement regarding "the lack of evidence" should be added to the reasonable doubt instruction, but invite the pattern jury instruction committee to study the issue.

58

ADKINS, J., dissenting.

Most respectfully, I dissent because I conclude that the trial court abused its discretion in its answer to the question raised by the jurors during deliberation. The jury asked the trial judge whether it could "consider the facts that there was no police report in evidence or no police testimony ...?", indicating that one or more of the jurors were provoked by defense counsel's closing argument that the police would have made a report or testified if Ms. Moran had suffered any injuries. But, the trial court declined to answer this direct question, and instead, instructed the jury that they must "decide this case based on what is in evidence" and "consider the testimony ... physical items of evidence, and any exhibits." In so doing, the trial court made erroneous and prejudicially misleading statements, which undermined the effect of the reasonable doubt instruction.

The court's response strongly implies that the jurors must not consider whether the State proved sufficient facts to convict the defendant of the elements of the crimes beyond a reasonable doubt. When a juror is told that she must decide the case based on what is in evidence, in response to a question about considering a potentially significant fact not in evidence, the obvious answer is: No, you may not consider what is not in evidence. Thus, with this response, the trial court gives them a "pass" on the fundamental and crucial part of their deliberations—did the State prove, beyond a reasonable doubt, that the defendant committed the crime.

As was his constitutional right, the defendant did not produce any testimony, physical items, or exhibits. In closing, counsel sought to cast doubt on Ms. Moran's testimony about the alleged assaults, pointing out that it was neither plausible nor corroborated. In support of his corroboration argument, defense counsel emphasized that there was no police testimony or report. This defense, I submit, was severely undermined when the trial court instructed the jury to consider only the evidence, and implied that they should not draw any inferences from the absence of police testimony. Indeed, when the

defendant rested without introducing any evidence, the court's instruction to consider the evidence, without mention of the reasonable doubt standard, could well have been construed as an endorsement of the State's proof. When a jury is told that it cannot draw inferences from the absence of evidence, the reasonable doubt standard goes out the window.

This cannot be harmless error. I am persuaded that this instruction caused prejudice to the defendant because the jury reported to the court that it was deadlocked, and thereafter, asked questions about the police's involvement—the question at issue here. Moreover, the jury convicted Petitioner of one assault charge, but acquitted him of the second one, which allegedly occurred some hours later. This sequence of events persuades me that one or more jurors had doubts about Ms. Moran's testimony, and that such juror(s) may have reached a different conclusion had the court included in its response a reminder that the State was required to prove the defendant's guilt beyond a reasonable doubt.

Chief Judge BELL authorizes me to state that he agrees with the views set forth herein.