**Angino & Rovner, P.C. v. Sovereign Bank, N.A.**

450

C.P. of Berks County, No. 13-1563

*Richard G. Angino*, for plaintiffs.
*Walter Weir, Jr.*, for defendants.

SPRECHER, *J.*, May 13, 2014—Plaintiffs appeal the orders dated February 28, 2014, and February 19, 2014, which sustained defendants' preliminary objections and dismissed plaintiffs' amended complaint with prejudice and the order dated June 25, 2013, signed by the Honorable Jeffrey L. Schmehl which sustained the preliminary objections of a third defendant, Cushman & Wakefield National Corporation, and dismissed the complaint against it with prejudice. This opinion is filed pursuant to Pa. R.A.P. 1925 and will address the orders of the undersigned. Judge Schmehl is no longer a Pennsylvania judge of the court of common pleas, so there will be no opinion regarding the issues related to his order.

FACTS

The following are the procedural facts.

On February 1, 2013, plaintiffs filed their original complaint against Weir & Partners LLP (W & P), Cushman & Wakefield National Corporation (Cushman & Wakefield), and Santander Holdings USA, Inc. (SHUSA), the holding company of Sovereign, now Santander (Bank). All three defendants filed preliminary objections. On May 30, 2013, the parties stipulated to dismiss SHUSA with prejudice as a defendant, that Bank would be added as the proper defendant, and that SHUSA's preliminary objections would continue to be advanced on Bank's behalf. On June 25, 2013, Judge Schmehl sustained the preliminary objections of the three defendants. Cushman & Wakefield was dismissed with prejudice, and plaintiffs were granted leave to file an amended complaint against the remaining defendants.

On July 11, 2013, plaintiffs filed an amended complaint with very similar allegations. W & P and Bank filed preliminary objections which this court sustained, and this court dismissed with prejudice the complaint against the remaining defendants.

The pertinent facts gleaned from the record are as follows.

Plaintiff, Richard C. Angino, is an attorney. He and his wife, Alice K. Angino, are the sole owners of plaintiffs King Drive Corporation and A La Carte Enterprises. These businesses are for residential land development and the operation of Felicita Resort. Plaintiff, Angino & Rovner, P.C., is Mr. Angino's law firm.

The Anginos are sophisticated borrowers and land developers. From 1971 through 2007, they invested an average of $1 million per year and borrowed $10 million

to $12 million per year for a total investment of more than $50 million. Before 2004 they used Wells Fargo for their banking needs. In 2004, they entered into a series of loan transactions with Waypoint Bank, Bank's predecessor, and Bank: (1) a loan made by Waypoint Bank to King Drive on October 29, 2004, in the original principal amount of $1,400,000.00; (2) a loan made by Bank to King Drive on September 2, 2005, in the original principal amount of $94,252.10; (3) a site development loan made by Bank to King Drive on July 3, 2007, in the original principal amount of $2,000,000.00; (4) a mortgage loan made by Bank to King Drive on November 28, 2007, in the original principal amount of $3,500,000.00; (5) a line of credit made by Bank to King Drive on November 28, 2007, in the original principal amount of $750,000.00; and (6) a line of credit made by Bank to A La Carte dated November 28, 2007, in the original principal amount of $750,000.00. The loans contained one, two, and three year maturity dates.

Plaintiffs allege in their amended complaint that from 2004 through 2008, Bank automatically renewed plaintiffs' loans and lines and letters of credit despite plaintiffs' inability to sell the requisite number of lots referenced in the financial documents. In 2007, the residential housing market collapsed, and plaintiffs were unable to sell the lots at the sales pace required in the loan documents. In 2008, plaintiffs wanted to borrow additional funds from Bank but were denied, because the lines were failing to generate the anticipated cash flow. Plaintiffs contend that beginning in 2008, Bank commenced a plan to divest itself of residential loans, lines of credit, and letters of credit by changing its prior practice of waiving compliance with the technical contract terms, including time and lot sales, and refusing to continue payments under its lines and letters of credit commitments.

By mid-2009, plaintiffs were in default of the loan documents for failing to sell lots at the required sales pace. Bank offered to modify the loans to extend the maturity dates, but plaintiffs refused this offer.

Bank notified plaintiffs on March 24, 2013, that they were in default of the loans. W & P, Bank's counsel, sent plaintiffs a letter advising that the loans were immediately due and payable. On July 14, 2011, Bank entered into a loan modification agreement. The modification extended the maturity dates for the loans, modified the interest rates, and required additional security. for the loans. Plaintiffs released all claims against the Bank, its employees, officers, directors, agents, representatives, attorneys, consultants, and advisors. The modification was negotiated by all of the plaintiffs and their counsel, and defendants.

Plaintiffs were unable to make the required June 30, 2012 principal payment of $500,000.00; therefore, on July 19, 2012, Bank agreed to amend the loan modification under the terms of the first amendment which plaintiffs and their legal counsel approved and executed. This amendment, *inter alia*, reduced the amount of June 30, 2012 principal payment and provided additional time for payment. Under the terms of this amendment, plaintiffs released all claims again against defendants.

Plaintiffs were again unable to make the principal payment due on December 31, 2012. Bank again agreed to amend the loan for a second time. Under the terms of the second amendment, plaintiffs again released all claims.

Plaintiffs requested that Bank make payments to them under letters of credit. Bank refused because plaintiffs were not the named beneficiaries and, therefore, not entitled to payment. Furthermore, under the terms of the loan modification, no further advances were permitted.

Moreover, two of the letters of credit had expired prior to the extension of the modification agreement and were not renewed.

Plaintiffs' amended complaint contains six causes of action, but within each cause of action are several claims. Defendants filed preliminary objections to the amended complaint. After argument and a review of the record, this court sustained defendants' preliminary objections. Plaintiffs did not substantially amend the complaint against these defendants in any salient manner, so this court dismissed the amended complaint against defendants with prejudice. Plaintiffs filed a timely appeal.

## ISSUES

This court ordered plaintiffs to file a concise statement of errors complained of on appeal. Plaintiffs complied with this directive; however, this court notes that plaintiffs' statement consists of sixteen pages with five attached exhibits, so it is far from concise. This court winnowed the following complaints from this voluminous document, the bulk of which reads like a brief.

1. The amended complaint is legally sufficient to state a claim for breach of contract.

2. The amended complaint is legally sufficient to state a claim for breach of fiduciary duty.

3. The amended complaint is legally sufficient to state a claim of the duty of good faith and fair dealing.

4. Whether this court erred in dismissing the first cause of action and the second cause of action because they attempt to assert affirmative defenses as independent causes of action.

5. The amended complaint is legally sufficient to state

a claim for civil conspiracy.

6. The amended complaint is legally sufficient to state a claim for intentional infliction of emotional distress.

7. The amended complaint is legally sufficient to state a claim for fraud.

8. The amended complaint is legally sufficient to state a claim for defamation.

9. Plaintiffs' tort claims are not barred by the gist of the action doctrine.

10. The amended complaint is legally sufficient to state a claim for the violation of the Dodd-Wall Street Reform and Consumer Protection Act.

## DISCUSSION

Preliminary objections in the nature of a demurrer should be sustained only if, assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action. *Lerner v. Lerner*, 954 A.2d 1229 (Pa. Super. 2008). In the case *sub judice*, this court found that plaintiffs failed to assert any legally cognizable claim. It will address plaintiffs' issues *seriatim*.

Plaintiffs first submit that the amended complaint is legally sufficient to state a claim for breach of contract. This complaint is without merit. A basic tenet of contract law is that when the language of a contract is clear and unambiguous its meaning must be determined by an examination of the content of the contract itself. The court must construe the agreement only as written and may not modify the plain meaning under the guise of interpretation. *Little v. Little*, 441 Pa. Super. 185, 657 A.2d 12 (1995).

In the instant case, there is no question that the plaintiffs

breached the loan modification and its amendments. By their own admission, they failed to sell the requisite numbers of lots per year, and they missed payments that were due under the various loan documents. Plaintiffs explain everything that they failed to do as "mere technicalities" and contend that Bank breached the agreements because it refused to ignore mere technicalities. A bank may refuse to extend credit or modify a loan if it wishes to do so. Here, Bank had ample reasons to deny requests for more funds and to foreclose. Plaintiffs want Bank to be punished because it had waived the provision of the requisite lot sales in the past. A bank is under no obligation to continue to waive pertinent provisions, especially if circumstances do not improve.

Plaintiffs next argue that the complaint is legally sufficient to state a claim for a breach of fiduciary duty. This contention is meritless. Plaintiffs have alleged no facts that create a fiduciary relationship between Bank and them. Usually, there is no confidential relationship between a borrower and a lender unless the lender exercises substantial control over the borrower's business affairs. In the case *sub judice*, Bank is not involved in the daily management and operations of the businesses, and it does not have the ability to compel plaintiffs to engage in unusual transactions. Bank did not compel plaintiffs to enter into the loan modification and its amendments. The terms were negotiated by the parties' attorneys when the plaintiffs were unable to meet their financial obligations. For these reasons, this issue must be dismissed.

Plaintiffs' third assertion is that the amended complaint is legally sufficient to state a claim for a breach of the duty of good faith and fair dealing. This contention fails and must be dismissed. Plaintiffs cite cases in which the court held or in *dicta* stated that a duty of good faith and fair dealing can be breached by a party; however, plaintiffs' cases are

inapposite to the instant case. Plaintiffs and Bank have a relationship of borrowers and lender. A lending institution does not violate a duty of good faith by adhering to its agreement with the borrower or by enforcing its legal and contractual rights a creditor. *Creeger Brick and Building Supply Inc. v. Mid State Bank and Trust Company*, 385 Pa. Super. 30, 560 A.2d 151 (1989). In the case at bar, Bank simply adhered to the parties' agreement and enforced its legal rights as plaintiffs' creditor.

Plaintiffs maintain that it is error to dismiss the first and second causes of action because they attempt to assert affirmative defenses as an independent cause of action. Unquestionably, these actions state a litany of the affirmative defenses which are listed in Pa.R.C.P. 1030: coercion, adhesion, impossibility, waiver and estoppel, fraud, and misrepresentation. Even assuming *arguendo* that these affirmative defenses are the basis of a complaint, plaintiffs have not shown that any of these grounds exist in this case.

An adhesion contract is a standard form contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who has little choice about the terms. A contract is unconscionable, and therefore avoidable, where there is a lack of meaningful choice in the acceptance of the challenged provision, and the provision unreasonably favors the party asserting it. *Bayne v. Smith*, 965 A.2d 26 (Pa. Super. 2009). In the case *sub judice*, the Mr. Angino is a noted attorney, not an unsophisticated consumer, and the parties negotiated the loan modification and the amendments thereto with their attorneys; there were no terms of adhesion or misrepresentations. Plaintiffs defaulted on their loans, so they may not have been in a strong bargaining position, but they were never coerced to sign any documents. Plaintiffs' real estate venture may be collapsing due to the economy,

but Bank does not have to loan plaintiffs more money when they are having trouble paying off their present loans. A bank is a business and giving money to poor credit risks is not a good business practice.

Plaintiffs next argue that the complaint is legally sufficient to state a claim for civil conspiracy. This contention is without merit and should be dismissed. A civil conspiracy is a combination of two or more persons who engage in an unlawful or criminal act or accomplish a lawful act by unlawful means or for an unlawful purpose. In the instant case, the defendants are the Bank and its attorneys; therefore, there is no conspiracy because it is impossible for a principal and agent to enter into a conspiracy. Even assuming *arguendo*, that a conspiracy existed between the defendants, they did nothing illegal or for an unlawful purpose against plaintiffs.

Plaintiffs' next argument is that the complaint was legally sufficient to state a claim for the intentional infliction of emotional distress. This contention fails. Intentional infliction of emotional distress occurs when one, intentionally and recklessly, by extreme and outrageous conduct, causes severe emotional distress to another. This court notes that all plaintiffs assert this action, but businesses are unable to suffer emotional distress. The only allegations to support this claim are that Bank's employees made telephone calls to the individual plaintiffs regarding their failure to make timely loan payments and they made "irresponsible threats of foreclosure." Bank pursued its legal rights and warned plaintiffs of its intent to foreclose due to the lack of payments. Hence, Bank's actions are legal, not irresponsible. If plaintiffs suffered emotional distress, it was the result of their unhappiness over Bank's pursuit of its legal remedies.

Plaintiffs assert that the complaint is legally sufficient to state a claim for fraud. This allegation is meritless. Pa.R.C.P. 1019 states that averments of fraud or mistake must be averred with particularity. Plaintiffs contend only that the defendants committed fraud and misrepresentations pertaining to their position regarding appraisals, obligations, and letters of credit. Plaintiffs do not delineate what was fraudulent or why an action was fraudulent. Plaintiffs do not agree with defendants' appraisals of their properties, but their appraisals do not constitute fraud. For these reasons, this issue should be dismissed.

Plaintiffs submit that the amended complaint is legally sufficient to state a claim for defamation. This complaint is a frippery. Plaintiffs do not state what statements were defamatory. Moreover, defendants did not publish any statements to the public. The public's knowledge gained through the publicity of a legal proceeding is not defamation.

Plaintiffs' penultimate contention is that their tort claims are not barred by the gist of the action doctrine. The gist of the action doctrine precludes tort claims that are collateral to claims sounding in contract. The doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims and, as a practical matter, precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims. *The Brickman Group, LTD. v. CGU Insurance Company*, 865 A.2d 918 (Pa. Super. 2004). If plaintiffs had pled legitimate intentional tort claims, perhaps they would have withstood the gist of the doctrine test; however, this court dismissed plaintiffs' tort claims because they were legally deficient. For this reason this assertion fails.

Plaintiffs' last argument is that the amended complaint

is legally sufficient to state a claim for a violation of the Dodd-Wall Street Reform and Consumer Protection Act. This argument is without merit. Plaintiffs aver that Bank violated the letter and spirit of the Act, but they do not state what the "spirit" is and what provision is violated. The Act has 161 titles and over 500 sections. Defendants should not have been made to guess exactly what section they are accused of violating and what section applies to commercial loans which are the subject of this proceeding.

In accordance with the foregoing opinion, this court submits that its decision should be affirmed and the complaint dismissed.